Filed 11/6/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| DENNIS NASRAWI et al., | H038894 |
| Plaintiffs and Appellants, | (Santa Clara County Super. Ct. No. 1-11-CV203324) |
| v. | |
| BUCK CONSULTANTS LLC et al., | |
| Defendants and Respondents. | |

Plaintiffs Dennis Nasrawi, Michael O'Neal, and Rhonda Biesemeier are retired public employees of Stanislaus County (County) and beneficiaries of a public pension trust administered by the Stanislaus County Employees Retirement Association (the Association). Defendants Buck Consultants LLC (Buck) and Harold Loeb provided actuarial services to the Association, also a defendant. According to plaintiffs, Buck and Loeb's actuarial negligence caused the pension trust to be dramatically underfunded. The Association has not sued Buck and Loeb for malpractice, an omission plaintiffs allege constituted a breach of the Association's fiduciary duties to them as beneficiaries. Plaintiffs further allege Buck and Loeb aided and abetted *other* breaches committed by the Association.

Plaintiffs appeal from a judgment of dismissal entered after the trial court sustained demurrers without leave to amend filed by defendants. We reverse and remand with directions.

# I. FACTUAL AND PROCEDURAL BACKGROUND[1]

## A. *The Association*

The Association is a public employee retirement system operating pursuant to section 17 of article XVI of the California Constitution (section 17) and the County Employees Retirement Law of 1937 (Gov. Code, § 31450 et seq.).[2]  The Association, which is managed by a nine-member board of administration (board), administers a pension trust fund for current and former County employees.[3]

The pension fund receives funding from three sources:  (1) employee contributions, (2) employer contributions from the County, and (3) the return on the Association's investments.  The board is responsible for helping to determine the County's contribution rate.  Specifically, the board is required to recommend a contribution rate to the board of supervisors based on an actuarial valuation conducted by an actuary.  (§§ 31453, subd. (a), 31453.5, 31454, subd. (a).)  The board, "consistent with the exclusive fiduciary responsibilities vested in it," has "the sole and exclusive power to provide for actuarial services in order to assure the competency of the assets of the . . . retirement system." (Cal. Const., art. XVI, § 17, subd. (e).)

Section 17 imposes various duties on the board, including obligations to (1) "administer the system in a manner that will assure prompt delivery of benefits and related services to the participants and their beneficiaries" (*id*., subd. (a)); (2) "discharge their duties with respect to the system solely in the interest of, and for the exclusive purposes of providing benefits to, participants and their beneficiaries, minimizing

---

[1] Because this matter comes to us following a judgment sustaining demurrers without leave to amend, we assume the truth of the material facts properly pleaded in plaintiffs' complaint.  (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

[2] Further unspecified statutory references are to the Government Code.

[3] The board is not named separately as a party in this action, and all actions taken by the board are alleged in the operative complaint as having been taken by the Association.

employer contributions thereto, and defraying reasonable expenses of administering the system" (*id*., subd. (b)); and (3) "discharge their duties with respect to the system with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with these matters would use in the conduct of an enterprise of a like character and with like aims." (*Id*., subd. (c).) Section 17 further provides that the "board's duty to its participants and their beneficiaries shall take precedence over any other duty." (*Id*., subd. (b).) These are "fiduciary responsibilities." (*Id*., subd. (e).)

### B. *The Association Deliberately Underfunded The Pension Fund*

Plaintiffs allege the Association deliberately underfunded the pension fund in the following ways: (1) using an "unrealistic and imprudent" assumed actuarial rate of return of 8.16 percent; (2) adopting a schedule of negative amortization of the system's unfunded liability for earned benefits; (3) intentionally managing the pension fund to ensure that it was always less than 90 percent funded, thereby avoiding certain employer contributions (i.e., cost-of-living adjustments); (4) using pension fund assets to substitute for the County's employer contributions; and (5) transferring assets from nonvaluation reserves to valuation reserves. Notably, these acts are *not* the basis for any claim against the Association in this action. Indeed, plaintiffs are pursuing breach of fiduciary duty claims against the Association for the alleged adoption of a schedule of negative amortization and transfers from nonvaluation reserves in another action, *O'Neal v. Stanislaus County Employees' Retirement Assn*., Superior Court of California, County of Stanislaus, case No. 648469, Fifth Appellate District, case No. F061439 (*O'Neal*).[4]

---

[4] The trial court sustained the Association's demurrer in *O'Neal*, concluding the complaint " 'does not allege facts which if true would show any abuse of discretion' " by the Association and "the complaint failed to allege legally cognizable damages." (*O'Neal v. Stanislaus County Employees' Retirement Association* (Apr. 4, 2012, F061439) [nonpub. opn.] 2012 WL 1114677.) On April 4, 2012, the Fifth District (continued)

3

Rather, as discussed below, the conduct above is alleged in the context of plaintiffs' claim against Buck and Loeb for aiding and abetting a breach of fiduciary duties.

## C. *Buck and Loeb Concealed The Association's Conduct*

Buck and its employee, Loeb, provided actuarial services to the Association. Plaintiffs allege Buck and Loeb knew of the Association's deliberate underfunding of the pension fund and the specific acts enumerated above. Buck and Loeb concealed the Association's practices by (1) failing to disclose and warn about the consequences of the Association's practices, (2) verifying the actuarial soundness of those practices, (3) and knowingly and falsely representing to trust fund beneficiaries at public meetings between 2005 and 2009 that the Association's practices were actuarially sound.

## D. *Buck and Loeb's Actuarial Negligence and the Tolling Agreement*

Buck and Loeb prepared an actuarial valuation of the pension fund dated January 9, 2007. That valuation materially understated the fund's liabilities because, in preparing the valuation, Buck and Loeb negligently relied on inappropriate actuarial assumptions. As a result of the negligently prepared actuarial valuation, the County's annual employer contribution to the pension fund was $40 million lower than it should have been.

On July 6, 2009, the Association entered into a tolling agreement with Buck. According to that agreement, the Association's preliminary investigation indicated that Buck had "committed malpractice in the performance of services for" the Association by employing assumptions that "severely understated" the system's experience with respect to expected withdrawals from the retirement system. The Association agreed not to assert any claims against Buck while the tolling agreement is in effect, in exchange for an agreement to toll all applicable statutes of limitations during that same time period. The tolling agreement may be terminated by either party upon 30 days' notice.

---

reversed and remanded, holding plaintiffs' had adequately pleaded causes of action for injunctive relief. (*Ibid.*) Buck and Loeb are not parties to the *O'Neal* action.

4

### E.     Earlier Iterations of Plaintiffs' Complaint

The plaintiffs are members of the Association with vested pension rights. Their initial complaint in this action, filed on October 8, 2009, in Stanislaus County Superior Court, asserted a single claim for actuarial negligence against Buck and Loeb. That claim was based solely on Buck and Loeb's alleged negligence in preparing the January 9, 2007 actuarial valuation and was asserted "in a representative capacity on behalf of" the Association, given its failure to bring suit itself.

Buck and Loeb removed the action to federal court on the basis of diversity jurisdiction. Plaintiffs amended their complaint twice in federal court. On March 8, 2011, the federal district court remanded the case to state court.

Upon remand, the parties successfully moved to transfer venue to Santa Clara County. The then-operative second amended complaint asserted claims for actuarial negligence and breach of fiduciary duty against Buck and Loeb. It included allegations that (1) the Association had improperly reduced employer contributions by adopting a schedule of negative amortization and transferring funds from nonvaluation reserves and (2) Buck and Loeb had concealed those practices. Buck and Loeb demurred and, alternatively, sought a stay pending the Fifth Circuit's decision in the *O'Neal* case, which was pending on appeal at the time. The Santa Clara County Superior Court sustained Buck and Loeb's demurrer with leave to amend, reasoning that plaintiffs lacked standing to assert an action against Buck and Loeb in a representative capacity on behalf of the pension trust fund.

Plaintiffs' third amended complaint asserted a breach of fiduciary duty claim against the Association and an aiding and abetting claim against Buck and Loeb. The trial court struck plaintiffs' claim against the Association because they had not sought leave to amend before adding it as a defendant. The court sustained with leave to amend Buck and Loeb's demurrer, again concluding plaintiffs lacked standing. The court further concluded that plaintiffs had failed to allege concealment by Buck and Loeb with

5

sufficient particularity. Plaintiffs then filed a fourth amended complaint asserting only a claim for aiding and abetting a breach of fiduciary duty against Buck and Loeb.

### F. Plaintiffs' Motion for Leave to File a Fifth Amended Complaint

Before Buck and Loeb had responded to the fourth amended complaint, plaintiffs sought leave to file a fifth amended complaint to add the Association as a defendant and to assert a claim for breach of fiduciary duty against it. Buck and Loeb opposed that motion, arguing that plaintiffs already had litigated their proposed claim against the Association in *O'Neal*. Plaintiffs responded that the two actions were based on different wrongful acts occurring at different times. Specifically, the *O'Neal* action was based on certain transfers of money by the Association that occurred in April 2009 and June 2010, as well as the Association's adoption of a negative amortization scheme in April 2009. By contrast, they explained that the current action against the Association is based only on its failure to sue Buck and Loeb for actuarial negligence. On July 13, 2012, the trial court granted plaintiffs leave to amend and deemed the previously-lodged fifth amended complaint filed and served as of that date.

### G. The Operative Fifth Amended Complaint and Defendants' Demurrers

In the fifth amended complaint, plaintiffs alleged the Association breached the fiduciary duties imposed on it by section 17 of the California Constitution by failing to sue Buck and Loeb for its negligent preparation of the January 9, 2007 actuarial valuation. Plaintiffs alleged the Association's breach had caused economic injuries to the pension trust fund and sought damages to "be paid to [the Association's] trust fund." In addition to damages, plaintiff's prayer for relief sought "such other and further relief as the court deems just and proper."

With respect to Buck and Loeb, the fifth amended complaint asserted a claim for aiding and abetting a breach of fiduciary duty. Notably, plaintiffs did not simply allege that Buck and Loeb aided and abetted the breach they asserted against the Association (namely, failure to file a malpractice suit). Instead, they alleged that Buck and Loeb

6

aided and abetted various *other* breaches, including those plaintiffs are pursuing against the Association directly in the *O'Neal* action.  As plaintiffs explained in their opposition to the Association's demurrer to the fifth amended complaint, *O'Neal* "is based in part on conduct which Buck and Loeb are alleged in *this* action to have aided and abetted." Those alleged underlying breaches by the Association included:  (1) using an "unrealistic and imprudent" assumed actuarial rate of return of 8.16 percent; (2) adopting a schedule of negative amortization of the system's unfunded liability for earned benefits; (3) intentionally managing the pension fund to ensure that it was always less than 90 percent funded, thereby avoiding certain employer contributions (i.e., cost-of-living adjustments); (4) using pension fund assets to substitute for the County's employer contributions; and (5) transferring assets from nonvaluation reserves to valuation reserves.  Plaintiffs alleged Buck and Loeb knew of that conduct and concealed it by way of omissions and affirmative misrepresentations that the Association's practices were actuarially sound.

All defendants demurred to the fifth amended complaint.  The trial court sustained the Association's demurrer without leave to amend on three grounds:  (1) plaintiffs failed to demonstrate compliance with the Government Claims Act (§ 810 et seq.); (2) the decision whether to pursue a negligence claim against Buck and Loeb is a discretionary one for which the Association has immunity under section 815.2; and (3) plaintiffs failed to allege legally cognizable damages.  The court sustained Buck and Loeb's demurrer without leave to amend on the theory that plaintiffs' failure to state a breach of fiduciary duty claim against the Association was fatal to their claim against Buck and Loeb.  The court reasoned that plaintiffs' aiding and abetting claim was "predicated" on their breach of fiduciary claim against the Association and thus "necessarily" failed.

II.    **DISCUSSION**

   A.    ***The Standard of Review***

We review an order sustaining a demurrer de novo, exercising our independent judgment as to whether a cause of action has been stated as a matter of law.  (*Moore v.*

7

*Regents of University of California* (1990) 51 Cal.3d 120, 125.)  Because a demurrer tests only the legal sufficiency of the pleading, the facts alleged in the pleading are deemed to be true.  (*Berg & Berg Enterprises*, *LLC v*. *Boyle* (2009) 178 Cal.App.4th 1020, 1034.)  We do not review the validity of the trial court's reasoning, and therefore will affirm its ruling if it was correct on any theory.  (*Ibid*.)  Nor are we "limited to plaintiff[']s theory of recovery in testing the sufficiency of [its] complaint against a demurrer, but instead must determine if the *factual* allegations of the complaint are adequate to state a cause of action under any legal theory."  (*Barquis v*. *Merchants Collection Assn*. (1972) 7 Cal.3d 94, 103.)

"Where a demurrer is sustained without leave to amend, [we] must determine whether there is a reasonable probability that the complaint could have been amended to cure the defect; if so, [we] will conclude that the trial court abused its discretion by denying the plaintiff leave to amend.  [Citation.]  The plaintiff bears the burden of establishing that it could have amended the complaint to cure the defect."  (*Berg & Berg Enterprises*, *LLC v*. *Boyle*, *supra*, 178 Cal.App.4th at p. 1035.)

### B. Plaintiffs' Claim Against The Association

#### 1. Government Claims Act

The Government Claims Act (§ 810 et seq.) "establishes certain conditions precedent to the filing of a lawsuit against a public entity.  As relevant here, a plaintiff must timely file a claim for money or damages with the public entity.  (§ 911.2.)"  (*State of California v*. *Superior Court* (2004) 32 Cal.4th 1234, 1237.)  "[T]he claims presentation requirement applies to all forms of monetary demands, regardless of the theory of the action," subject to certain statutorily-enumerated exceptions.  (*Sparks v*. *Kern County Bd*. *of Supervisors* (2009) 173 Cal.App.4th 794, 798 (*Sparks*).)  Pertinent to our discussion is subdivision (f), which excludes from notice requirements "[a]pplications or claims for money or benefits under any public retirement or pension system."  (§ 905, subd. (f).)  "The failure to timely present a claim for money or damages

8

to a public entity bars the plaintiff from bringing suit against that entity." (*Sparks*, *supra*, at p. 798; see also § 945.4.) "A cause of action that is subject to the statutory claim procedure must allege either that the plaintiff complied with the claims presentation requirement, or that a recognized exception or excuse for noncompliance exists. . . . If the plaintiff fails to include the necessary allegations, the complaint is subject to attack by demurrer." (*Gong v. City of Rosemead* (2014) 226 Cal.App.4th 363, 374.)

Plaintiffs maintain the trial court erred by sustaining the Association's demurrer for failure to comply with the claims statute because the claim presentation requirement does not apply to their action. Alternatively, plaintiffs argue that if the Government Claims Act applies they should have been permitted to amend their complaint to allege their compliance. As discussed below, we disagree on both counts.

### a. *Plaintiffs Assert a "Claim for Money or Damages"*

Plaintiffs first contend that their claim against the Association is exempt from the Government Claims Act because they are not seeking money or damages. Rather, they say, their complaint sought "primarily equitable" relief, namely, the appointment of a receiver to pursue the Association's malpractice claim against Buck and Loeb.

In fact, plaintiff's fifth amended complaint expressly requested "damages" and "recovery . . . paid to [the Association's] trust fund." The complaint included the customary prayer for "other and further relief as the court deems just and proper," but it made no mention of a receiver or any other specific equitable relief. No form of the words "injunction," "equity," or "receiver" appears in the complaint. For these reasons, the court did not err in concluding the primary purpose of plaintiffs' claim against the Association was to obtain money damages, such that it was subject to the presentation requirements of the Government Claims Act.

### b. *The Section 905, Subdivision (f) Exception Does Not Apply*

Plaintiffs next argue that the section 905, subdivision (f) exception to the claim presentation requirement for "claims for money or benefits under any public retirement or

9

pension system" applies to their claim against the Association.

Generally, "the statutory exceptions specified in section 905 are given a strict construction." (*Dalton v. East Bay Mun. Utility Dist.* (1993) 18 Cal.App.4th 1566, 1573 (*Dalton*).) Courts have construed the section 905, subdivision (f) exception specifically as applying only "where an individual seeks money due under the terms of an existing pension system." (*Canova v. Trustees of Imperial Irrigation Dist. Employee Pension Plan* (2007) 150 Cal.App.4th 1487, 1497, citing *Dalton*, *supra*, at p. 1574.) Where, as here, plaintiffs allege "tortious wrongdoing by [the] defendant[]," section 905, subdivision (f) is not implicated. (*Dalton*, *supra*, at p. 1574 [former utility district employees were required to file a claim pursuant to § 905 before asserting breach of fiduciary duty claim against district's retirement system].) Accordingly, plaintiffs were required to satisfy the claim presentation requirement.

### c. Leave to Amend

Plaintiffs maintain that, even if the claim presentation requirement applies, they satisfied that requirement and should have been granted leave to amend to allege that compliance. For that argument, plaintiffs merely note that in the *O'Neal* action they alleged: "To the extent the plaintiffs were required to comply with the Government Claims Act, they have so complied." Plaintiffs have not met their burden of demonstrating that the trial court abused its discretion in denying them leave to amend their complaint to allege compliance with the claims presentation requirement. Section 910 requires that a claim set forth certain information, including "(c) [t]he date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted . . . [¶] [and] (d) [a] general description of the . . . injury, damage or loss incurred." (§ 910, subds. (c), (d).) Because plaintiffs have not included the claim in the record, they have failed to affirmatively show error by demonstrating that they filed a claim meeting the minimum requirements of section 910. (*Ballard v. Uribe* (1986) 41 Cal.3d 564, 574-575 [party challenging judgment has burden to show reversible error]; *Maria P. v. Riles*

10

(1987) 43 Cal.3d 1281, 1295-1296 [failure to provide an adequate record on an issue requires that the issue be resolved against appellant].)[5]

Plaintiffs likewise have failed to show that the trial court erred by not granting them leave to amend to seek equitable relief. Plaintiffs maintain that they could properly seek "an order compelling [the Association] to perform its duty by prosecuting actuarial negligence claims against Buck and Loeb" under Probate Code section 16420, subdivision (a)(1) or the appointment of a receiver under Probate Code section 16420, subdivision (a)(4). But, as plaintiffs acknowledge, the Probate Code applies to retirement funds only where some " 'statutory or common law principle[], . . . court order or rule, or . . . contract' " allows for its application. (*Meyers v. The Retirement Fund of Federated City Employees* (2014) 223 Cal.App.4th 1201, 1212, quoting Prob. Code, § 15003, subd. (c); see also *id.*, § 82, subd. (b)(13) [excluding from the definition of "trust" trusts "for the primary purpose of paying . . . pensions[] or employee benefits of any kind"].) Plaintiffs identify no such principle, order, rule or contract upon which a court could find a basis to apply trust law to the pension fund.

### 2. Statutory Governmental Immunity

Even assuming plaintiffs had carried their burden with regard to amending their complaint to seek equitable relief, thereby avoiding the Government Claims Act, their claim against the Association would fail on governmental immunity grounds.

"Conceptually, the question of the applicability of a statutory immunity does not even arise until it is determined that a defendant . . . would be liable in the absence of

---

[5] Notably, plaintiffs argued below that their claim against the Association in this action and those they are pursuing in *O'Neal* involve "*different wrongful acts*" and different "time frame[s]." In view of that representation, it seems unlikely that any claim plaintiffs presented in connection with *O'Neal* included the date and circumstances surrounding the Association's failure to sue Buck and Loeb for malpractice. In any event, as discussed above, plaintiffs failure to make an adequate record on appeal in that regard is fatal to their contention that the trial court erred by denying them leave to amend.

11

such immunity." (*Davidson v. City of Westminster* (1982) 32 Cal.3d 197, 201-202; see also *Caldwell v. Montoya* (1995) 10 Cal.4th 972, 985 (*Caldwell*) [statutory immunity applies where "public agencies or employees would otherwise be liable under general principles of law"].) Accordingly, we begin by considering the basis for the Association's alleged liability.

A public entity, like the Association, is subject to direct liability only as provided by statute or required by the state or federal Constitution. (§ 815; *Lundeen Coatings Corp. v. Department of Water & Power* (1991) 232 Cal.App.3d 816, 832.) A public entity is subject to vicarious liability for injuries caused by its employees, but only to the extent those employees themselves are not immune from liability. (§ 815.2, subd. (b).) Public entity employees are immune from liability for injuries caused by their discretionary acts or omissions. (*San Mateo Union High School Dist. v. County of San Mateo* (2013) 213 Cal.App.4th 418, 433; § 820.2.) An act or omission is considered discretionary (and subject to immunity) where it "involve[s] planning and policymaking." (*Doe 1 v. City of Murrieta* (2002) 102 Cal.App.4th 899, 912.) Immunity is considered appropriate "for those '*basic policy decisions* [which have] . . . been [expressly] committed to coordinate branches of government,' " because "judicial interference" with such decisions "would . . . be 'unseemly.' " (*Caldwell*, *supra*, 10 Cal.4th at p. 981.) "[T]o be entitled to immunity the state must make a showing that such a policy decision, consciously balancing risks and advantages, took place." (*Johnson v. State of California* (1968) 69 Cal.2d 782, 794, fn. 8.) By contrast, "lower-level, or 'ministerial,' decisions that merely implement a basic policy already formulated" are not entitled to immunity. (*Caldwell*, *supra*, at p. 981.)

Here, plaintiffs allege that the Association violated its constitutionally-imposed fiduciary duties by failing to pursue litigation against Buck and Loeb. The constitutional provision on which plaintiffs rely--section 17--imposes various fiduciary duties on *the board*, not the Association itself. Accordingly, the Association's liability, if any, is

12

vicarious liability for the board's failure to sue. (See *Masters v. San Bernardino County Employees Retirement Assn.* (1995) 32 Cal.App.4th 30, 49 [under § 815.2, county employment retirement association is immune from liability for board's acts to the extent the board is immune].)

The next question is whether the board--and hence the Association--is immune from liability. Before reaching that issue, we must address plaintiffs' position that, because they allege a constitutionally-based duty, we should not consider the question of immunity. Plaintiffs' argument ignores case law holding that the existence of a duty " 'is only a threshold issue, beyond which remain the immunity barriers.' " (*Davidson v. City of Westminster*, *supra*, 32 Cal.3d at p. 202; *Caldwell*, *supra*, 10 Cal.4th at p. 985 ["actionable duty and statutory immunity [are] separate issues"].) Undoubtedly, the board owes fiduciary duties under section 17, but whether it is immune from alleged violations of those duties is a separate question. And, contrary to plaintiffs' view, the immunity question is not answered by the mere fact that the constitution is the source of the duties at issue. For their argument to the contrary, plaintiffs rely on two cases holding that section 815 does not bar direct public entity liability for constitutional violations. (*Fenton v. Groveland Community Services Dist.* (1982) 135 Cal.App.3d 797, 803 (*Fenton*) disapproved of by *Katzberg v. Regents of University of California* (2002) 29 Cal.4th 300 [§ 815 did not bar damages claim for violation of constitutional right to vote]; *Young v. County of Marin* (1987) 195 Cal.App.3d 863.) But direct liability under section 815 is not at issue here. Rather, we are concerned with vicarious liability. Thus, to accept plaintiffs' argument, we would need to conclude that public entity employees are liable for injuries caused by their discretionary acts or omissions that violate constitutionally-imposed duties. Neither the statute nor the cases on which plaintiffs rely supports such a conclusion. To the contrary, in *Fenton*, the court considered whether county employees were entitled to immunity because they engaged in a discretionary act in denying plaintiffs' right to vote. (*Fenton*, *supra*, at p. 806.) The court did not reject

13

that argument out of hand simply because plaintiffs alleged a constitutional violation, as plaintiffs would have us do. Rather, the court considered whether those county employees' actions constituted policymaking or the execution of ministerial tasks. (*Ibid.* [finding no immunity based on conclusion that "respondents were not engaging in policy-making, but were merely exercising the ministerial task of determining if certain procedural (i.e., residency) requirements were met on the part of two potential voters"]; see also *DiLoreto v. Board of Education* (1999) 74 Cal.App.4th 267 [in case alleging free speech violations, holding individual defendants were immune from liability for their discretionary acts under § 820.2].)

In view of the foregoing, whether the Association can be held liable for the board's failure to sue Buck and Loeb turns on whether that "omission was the result of the exercise of the discretion vested in" the board. (§ 820.2.) We conclude that it was. Section 17 imposes various fiduciary duties on the board. Given the breadth of those duties, section 17 necessarily vests the board with discretion in the manner in which it fulfills those duties. The decision whether to pursue litigation necessarily requires a judgment based on an evaluation of the merits of the potential claim and possible defenses, as well as a cost-benefit analysis of the litigation. "The decision, requiring as it does, comparisons, choices, judgments, and evaluations, comprises the very essence of the exercise of 'discretion' and we conclude that such decisions are immunized under section 820.2." (*Thompson v. County of Alameda* (1980) 27 Cal.3d 741, 749.) Therefore, the trial court correctly sustained the Association's demurrer on immunity grounds.[6] (*Caldwell*, *supra*, 10 Cal.4th at p. 989 [finding immunity at pleading stage].)

---

[6] Because we conclude the trial court correctly sustained the Association's demurrer on Government Claims Act and immunity grounds, we need not consider whether plaintiffs alleged legally cognizable damages.

14

### C. *Plaintiffs' Claim Against Buck and Loeb*

#### 1. *Aiding and Abetting Liability*

A defendant is liable for aiding and abetting another in the commission of an intentional tort, including a breach of fiduciary duty, if the defendant " ' "knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act." ' " (*Casey v. U.S. Bank Nat. Assn.* (2005) 127 Cal.App.4th 1138, 1144 (*Casey*).)  The elements of a claim for aiding and abetting a breach of fiduciary duty are:  (1) a third party's breach of fiduciary duties owed to plaintiff; (2) defendant's actual knowledge of that breach of fiduciary duties; (3) substantial assistance or encouragement by defendant to the third party's breach; and (4) defendant's conduct was a substantial factor in causing harm to plaintiff.  (Judicial Council of Cal. Civ. Jury Instns. (CACI) (2014) No. 3610; *American Master Lease LLC v. Idanta Partners, Ltd.* (2014) 225 Cal.App.4th 1451, 1478.)  Some cases suggest a complaint must allege a fifth element--that the aider and abettor had the specific intent to facilitate the wrongful conduct.  (Directions for Use of CACI No. 3610, p. 633, citing *Schulz v. Neovi Data Corp.* (2007) 152 Cal.App.4th 86, 95.)

#### 2. *Analysis*

"[T]o analyze the sufficiency of [plaintiffs'] claim for aiding and abetting breach of fiduciary duty, we must first 'identify precisely the breach of fiduciary duty for which [plaintiffs] seek[] to hold [Buck and Loeb] liable.' "[7] (*Casey*, *supra*, 127 Cal.App.4th at

---

[7] This is where the trial court went astray.  It incorrectly identified the pertinent breach of fiduciary duty as the Association's failure to sue Buck and Loeb for malpractice.  The trial court then sustained Buck and Loeb's demurrer based on the principle that there can be no aiding and abetting liability absent the commission of an underlying tort.  While that certainly is the case (*Richard B. LeVine, Inc. v. Higashi* (2005) 131 Cal.App.4th 566, 574), that principle is not dispositive here.  As discussed above, plaintiffs do not allege Buck and Loeb aided and abetted the Association's refusal to sue Buck and Loeb.  Accordingly, that plaintiffs failed to state a claim against the Association based on that conduct has no bearing on their aiding and abetting claim against Buck and Loeb.

15

p. 1149.) The asserted breach of fiduciary duty was the Association's deliberate underfunding of the pension plan. To state an aiding and abetting claim against Buck and Loeb based on that primary wrong, plaintiffs must allege: (1) the Association's schemes to underfund the pension plan breached fiduciary duties it owed to plaintiffs; (2) Buck and Loeb knew about the Association's conduct and resulting breaches; (3) Buck and Loeb provided substantial assistance or encouragement to the Association in committing those breaches; and (4) Buck and Loeb's conduct was a substantial factor in harming plaintiffs. (CACI No. 3610.) As noted, "[s]ome cases seem to hold that in addition . . . a complaint must allege the aider and abettor had the specific intent to facilitate the wrongful conduct." (Directions for Use of CACI No. 3610, p. 633, citing *Schulz v. Neovi Data Corp.*, *supra*, 152 Cal.App.4th at p. 95.)

The fifth amended complaint adequately alleged each of the requisite elements of a claim for aiding and abetting a breach of fiduciary duty. First, it alleged that the Association breached its fiduciary duties to plaintiffs by (1) using an "unrealistic and imprudent" assumed actuarial rate of return of 8.16 percent; (2) adopting a schedule of negative amortization of the system's unfunded liability for earned benefits; (3) intentionally managing the pension fund to ensure that it was always less than 90 percent funded, thereby avoiding certain employer contributions (i.e., cost-of-living adjustments); (4) using pension fund assets to substitute for the County's employer contributions; and (5) transferring assets from nonvaluation reserves to valuation reserves. Second, the complaint alleged that Buck and Loeb knew of that conduct and that the Association was breaching its fiduciary duties to plaintiffs. Third, plaintiffs alleged that Buck and Loeb gave "substantial encouragement and assistance" to the Association's breach by (1) failing to disclose and warn about the consequences of the Association's practices, (2) verifying the actuarial soundness of those practices, (3) and knowingly and falsely representing to trust fund beneficiaries at public meetings between 2005 and 2009 that the Association's practices were actuarially sound. Fourth, the complaint alleges Buck

16

and Loeb's conduct proximately caused economic injury to the pension trust fund.

With respect to the fourth element, Buck and Loeb argue that, as trust beneficiaries, plaintiffs lack standing to sue for harm to the pension trust fund itself. Our colleagues in the First District squarely rejected an analogous argument in *City of Atascadero v. Merrill Lynch*, *Pierce*, *Fenner & Smith*, *Inc.* (1998) 68 Cal.App.4th 445. As the court explained in that case, generally "the trustee . . . is the real party in interest with legal title to any cause of action on behalf of or in the name of the trust." (*Id.* at p. 461.) However, "trust beneficiaries retain the right to bring claims directly against third parties who have . . . aided or abetted such a breach [of trust] by the trustee." (*Id.* at p. 460.) That is precisely what plaintiffs do here. Thus, Buck and Loeb's "reliance on the doctrine of the law of trusts that the trustee of an express trust is the real party in interest with legal title to any cause of action on behalf of or in the name of the trust, and a trust beneficiary has no legal title or ownership interest in the trust assets" is misplaced. (*Id.* at pp. 461-462; see also *Wolf v. Mitchell*, *Silberberg & Knupp* (1999) 76 Cal.App.4th 1030, 1040.)

As noted, some cases suggest that a plaintiff also must plead specific intent to facilitate the underlying tort. (*Gerard v. Ross* (1988) 204 Cal.App.3d 968, 983 ["A defendant can be held liable as [an aider and abettor] . . . only if he or she knew that a tort had been, or was to be, committed, and acted with the intent of facilitating the commission of that tort."]; *Howard v. Superior Court* (1992) 2 Cal.App.4th 745, 749 ["aiding and abetting . . . necessarily requires a defendant to reach a conscious decision to participate in tortious activity for the purpose of assisting another in performing a wrongful act"]; cf. *In re First Alliance Mortg. Co.* (9th Cir. 2006) 471 F.3d 977, 993 ["aiding and abetting liability under California law, as applied by the California state courts, requires a finding of actual knowledge, not specific intent"].) We need not decide whether specific intent is a required element because, read liberally, the fifth amended complaint alleges that Buck and Loeb intended to assist the Association in breaching its

17

fiduciary duties. In particular, plaintiffs allege that, with knowledge of the Association's breaches, Buck and Loeb "gave substantial encouragement and assistance to [the Association] *to breach its fiduciary duties*." (Italics added.) Fairly read, that allegation indicates intent to participate in tortious activity.

Buck and Loeb's contention that plaintiffs failed to state a claim against them because Buck and Loeb owe no fiduciary duties to plaintiffs fails to carry the day. That argument ignores the distinction between liability based on conspiracy to commit a tort and liability for aiding and abetting a tort. "[T]ort liability arising from conspiracy presupposes that the coconspirator is legally capable of committing the tort, i.e., that he or she owes a duty to plaintiff recognized by law and is potentially subject to liability for breach of that duty." (*Applied Equipment Corp. v. Litton Saudi Arabia Ltd*. (1994) 7 Cal.4th 503, 511.) By contrast, "a defendant may be found liable for aiding and abetting a breach of fiduciary duty even though the defendant owes no independent duty to the plaintiff." (*Neilson v. Union Bank of California, N.A.* (C.D. Cal. 2003) 290 F.Supp.2d 1101, 1137; see also *Casey*, *supra*, 127 Cal.App.4th at p. 1145, fn. 2 [rejecting argument that defendants could not be liable for aiding and abetting a breach of fiduciary duty because they did not owe an independent fiduciary duty]; *Berg & Berg Enterprises*, *LLC v. Sherwood Partners*, *Inc*. (2005) 131 Cal.App.4th 802, 823, fn. 10 ["civil liability for aiding and abetting the commission of a tort, which has no overlaid requirement of an independent duty"].) For the foregoing reasons, the trial court erred in sustaining Buck and Loeb's demurrer to the fifth amended complaint.

## III.   DISPOSITION

The judgment of dismissal is reversed and the cause is remanded to the superior court with directions to vacate its order sustaining defendants' demurrers to the fifth amended complaint without leave to amend and to enter a new order (1) sustaining the Stanislaus County Employees Retirement Association's demurrer without leave to amend and (2) overruling Buck Consultants LLC and Harold Loeb's demurrer. The Stanislaus

18

County Employees Retirement Association shall recover its costs on appeal from plaintiffs.  Plaintiffs shall recover the costs attributable to their appeal from the order sustaining Buck and Loeb's demurrer only from Buck and Loeb.  (Cal. Rules of Court, rule 8.278(a)(3).)

_____
                                    Premo, J.

WE CONCUR:



_____
        Rushing, P.J.




_____
        Elia, J.




<u>Nasrawi et al. v. Buck Consultants LLC et al.</u>
H038894

| | |
|---|---|
| Trial Court: | Santa Clara County Superior Court<br>Superior Court No. 1-11-CV203324 |
| Trial Judge: | Hon. Aaron Persky |
| Counsel for Plaintiff/Appellant:<br>Dennis Nasrawi, Michael O'Neal,<br>Rhonda Biesemeier | Law Offices of Michael A. Conger<br>Michael A. Conger<br><br>Richard H. Benes |
| Counsel for Defendant/Respondent:<br>Stanislaus County Employees'<br>Retirement Association | Damrell, Nelson, Schrimp, Pallios,<br>Pacher & Silva<br>Fred A. Silva<br>Kirin K. Virk |
| Counsel for Defendants/Respondents:<br>Buck Consultants LLC,<br>Harold Loeb | Buchalter Nemer<br>Peter G. Bertrand<br>Michael N. Westheimer<br>Cynthia Fair Moir |

Nasrawi et al. v. Buck Consultants LLC et al.
H038894