Filed 1/25/24  Zuniga v. Western Riverside Council of Governments CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| ANTONIO ZUNIGA et al.,<br><br>    Plaintiffs and Appellants,<br><br>    v.<br><br>WESTERN RIVERSIDE COUNCIL OF GOVERNMENTS,<br><br>    Defendant and Respondent. | D080697<br><br><br>  (Super. Ct. No. 37-2021-00007702-CU-MC-NC) |

APPEAL from a judgment of the Superior Court of San Diego County, Earl H. Maas III, Judge.  Reversed and remanded.

Law Offices of Alysson R. Snow, Alysson R. Snow, for Plaintiffs and Appellants.

Best Best & Krieger, Scott W. Ditfurth, Andrew G. Saghian, and Kara L. Coronado, for Defendant and Respondent.

Antonio and Maria Zuniga (the Zunigas) appeal from the judgment of dismissal of their causes of action against Western Riverside Council of Governments (WRCOG) after the trial court sustained a demurrer without leave to amend. The trial court concluded the Zunigas had failed to file suit against WRCOG within six months of WRCOG's rejection of the claim filed by the Zunigas pursuant to the Government Claims Act (Gov. Code, § 810 et seq.).[1]

According to the Zunigas, because the operative First Amended Complaint (FAC) did not allege a claim for "money or damages" against WRCOG (§§ 905, 945.4), the trial court erred in applying the six-month limitations period in the Government Claims Act. (§ 945.6, subd. (a)(1).) Alternatively, the Zunigas contend that the trial court abused its discretion in not granting them leave to amend their pleadings to clarify that they currently do not seek money or damages against WRCOG.

We conclude that the trial court properly sustained the demurrer to the FAC based on the failure of the Zunigas to file suit within the six-month limitations period. However, in light of recent factual developments, the trial court abused its discretion in failing to grant leave to amend for the Zunigas to clarify that they no longer seek money or damages against WRCOG. We accordingly reverse the judgment of dismissal, and we remand for further proceedings consistent with this opinion.

---

[1] Unless otherwise indicated, all further statutory references are to the Government Code.

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *WRCOG's Role as a Lender in the PACE Program*

To understand the factual context in which this litigation arises, we begin with an overview of California's Property Assessed Clean Energy program and the role of WRCOG in that program.

"In 2008, California enacted a property assessed clean energy program (PACE) as a method for homeowners to finance energy and water conservation improvements. Like an ordinary home equity loan, a PACE debt is created by contract and secured by the improved property. But like a tax, the installment payments are billed and paid as a special assessment on the improved property, resulting in a first-priority tax lien in the event of default." (*Morgan v. Ygrene Energy Fund, Inc.* (2022) 84 Cal.App.5th 1002, 1007.) In enacting the PACE program, the Legislature created "a voluntary contractual assessment program that provides the legislative body of any public agency with the authority to finance the installation of distributed generation renewable energy sources and energy or water efficiency improvements that are permanently fixed to residential, commercial, industrial, agricultural, or other real property." (Sts. & Hy. Code, § 5898.14, subd. (b).)

As the FAC explains, WRCOG is a joint powers authority (§ 6502) that participates in the PACE program as a lender providing financing for energy efficient home improvement projects through voluntary property tax assessments. According to the FAC, the name of the financing program provided to homeowners by WRCOG is the "HERO program." WRCOG allegedly uses an entity called Renovate America, Inc. "to run the day-to-day operations and contract with its PACE solicitors and solicitor agents to sell

3

and market its HERO program."[2]  WRCOG and Renovate America, in turn, allegedly "use a network of thousands of home improvement contractors to facilitate homeowners entering into PACE loans."  According to the FAC, the contractors "act as *de facto* mortgage brokers and are the primary and, in many cases, the only point of contact between the homeowner and . . . WRCOG and Renovate America."  As explained in the FAC, when WRCOG and a homeowner enter into an assessment agreement under the HERO program to fund the home improvements, "[u]nder terms of the WRCOG's assessment agreement, the homeowner agrees to repay the loan through a voluntary property tax assessment, which is recorded as a priority lien on the home.  As this is a tax assessment, WRCOG has a super priority lien over even the first mortgage lender."  (Italics and boldface omitted.)

B.      *The Assessment Agreement Between the Zunigas and WRCOG*

The Zunigas are an elderly couple.[3]  In February 2018, a consultant for Suneco Solar Energy came uninvited to the Zunigas' home, claiming that the Zunigas could qualify for a free solar energy system.  Purportedly to facilitate a credit check, the Zunigas supplied their social security numbers and other personal identifying information.  The consultant said she would return on another day.  Several days later the consultant returned to the Zunigas' home.  On this second visit, the consultant represented that she worked for San Diego Gas and Electric and wanted to talk to the Zunigas about a new energy efficient appliance program.  The consultant said she would return a

_____

[2]      The FAC alleges that Renovate America filed a petition for bankruptcy in December 2021 and was undergoing liquidation.  The FAC nevertheless refers to Renovate America's involvement with WRCOG in the present tense, and we accordingly do so as well in describing the allegations of the FAC.

[3]      As this appeal is from an order sustaining a demurrer, we describe the factual background as it is alleged in the FAC.

4

third time, but she did not do so. The Zunigas accordingly assumed they did not qualify for either program.

In November 2019, the Zunigas discovered that their property taxes had increased by $4,222.40 due to a HERO assessment. After a family member investigated and contacted Renovate America, the Zunigas became aware of two documents, both dated February 28, 2019, in which they purportedly agreed to a HERO assessment on their property. The first document was a HERO Financing Application. The second document was an Assessment Agreement that purported to be entered into by the Zunigas and WRCOG. According to the Zunigas, they had never before seen or signed either document. Moreover, the HERO Financing Application contained multiple errors, such as an incorrect phone number and email address for the Zunigas. The Zunigas concluded that a "fake" email address was used to generate their signatures without their knowledge or approval.

The Zunigas also discovered a third relevant document: a HERO Financing Program Completion Certificate, dated March 6, 2019, that was signed by Martinez Construction. According to that document, Martinez Construction had used HERO funding proceeds of $37,200 to install a solar energy system on the Zunigas' house. However, as the Zunigas alleged in the FAC, no such work was ever performed. After learning of the document, the Zunigas contacted Martinez Construction, which denied having entered into any contract with the Zunigas and stated that it was not in the business of installing solar energy systems. Renovate America then sent an inspector to the Zunigas' home, who confirmed that no solar energy system had been installed.

In February 2020, the Zunigas sent a notice of claim to WRCOG.[4]  On February 26, 2020, WRCOG mailed a notice of rejection of claim to the Zunigas (Notice of Rejection).  The Notice of Rejection informed the Zunigas of the six-month deadline to file a court action on their claim pursuant to section 945.6, subdivision (a)(1).

C.    *The Zunigas' Litigation Against WRCOG*

On February 19, 2021, almost a year after WRCOG mailed the Notice of Rejection, the Zunigas filed a lawsuit against numerous defendants, including WRCOG,[5] arising from the HERO assessment that they alleged had been wrongly imposed on their property.[6]  As alleged in the operative FAC, the Zunigas' claims against WRCOG were premised on the allegations that (1) "[e]ven after the HERO Program's inspector confirmed that no work was performed, WRCOG and Renovate America continue to maintain the super priority lien on the Zunigas' home and to add the assessment to the tax rolls each year"; and (2) "WRCOG persists in reporting the assessment on the tax rolls, retaining the proceeds from the assessments, and maintaining the super priority lien on their home."

---

[4]    Although the FAC alleges that the notice of claim that the Zunigas sent to WRCOG is attached as Exhibit G, that attachment is, in fact, *not* a notice of claim addressed to WRCOG but instead is a notice of cancellation directed to Renovate America.  Accordingly, we are unable to describe the content of the notice of claim that the Zunigas sent to WRCOG.

[5]    The other defendants named in the FAC are Martinez Construction and an individual associated with it, other contractors, two bonding companies, and two individuals employed by WRCOG.

[6]    Another couple, Salvador and Amalia Sanchez, joined the lawsuit as plaintiffs in the FAC, alleging a similar experience with a HERO assessment based on falsified documents.

The FAC alleged two causes of action against WRCOG:  (1) financial abuse in violation of the Elder Abuse and Dependent Adult Civil Protection Act (Welf. & Inst. Code, §§ 15600, 15610, 15657.5) (the financial elder abuse cause of action); and (2) "Cancellation of Written Instrument . . . due to Fraud, Unconscionability, and Illegality" pursuant to Civil Code section 3412 (the cancellation of contract cause of action).  In both of those causes of action, the Zunigas indicated they had suffered monetary damages and were seeking monetary relief from WRCOG.

The financial elder abuse cause of action specifically alleged that "[t]he Zunigas and Mrs. Sanchéz [sic] have suffered damages as a direct and proximate result of WRCOG's actions, including, without limitation, their property being encumbered with a super priority lien, the loss of the ability to alienate property, assessment payments, and severe emotional distress."  The cancellation of contract cause of action specifically alleged that "Plaintiffs have suffered a pecuniary loss because of [the Assessment Agreement], including but not limited to:  the assessment payments, interest, fees, and costs associated with the illegal, unconscionable, and fraudulent loan."

More generally, the FAC alleged in its preliminary discussion that "[t]he Zunigas have suffered damages, including the amounts paid for the assessment proceeds, the costs of mailing the notice of claims certified mail, and the costs associated with having to litigate these issues to have the illegal assessments and liens cancelled."  Also in the preliminary discussion, the FAC alleged that "Plaintiffs have suffered damages, including injury in fact and money damages, as a direct and proximate result of Defendants' actions," including "property taxes that have increased," a "loss of equity in

7

their homes, emotional distress, and costs associated with this lawsuit."[7] The prayer for relief by the Zunigas at the end of the FAC included a prayer that "WRCOG repay the amounts paid by the Zunigas for the assessments from the assessment proceeds."

WRCOG filed a demurrer to the FAC, targeting the causes of action alleged by both the Zunigas and the Sanchezes. As to the Zunigas, WRCOG set forth multiple grounds for its demurrer.

First, WRCOG argued that the Zunigas' claims against it were moot and should be dismissed on that basis. Specifically, WRCOG explained that it had (1) paid the Zunigas a full refund of all of their property tax payments that were the result of the disputed assessment, and (2) recorded a notice of discharge of the assessment lien. WRCOG requested that the trial court take judicial notice of documents that (1) established the discharge of the assessment lien, and (2) indicated that a check repaying the Zunigas in the amount of $8,444.80 had been sent to the Zunigas' attorney on June 29, 2021, which is one day *after* the FAC was filed.[8]

---

[7] The use of the collective term "Plaintiffs" in the FAC to refer to both the Zunigas and the Sanchezes makes it unclear whether the FAC is alleging certain categories of damages only on behalf of one of the two couples. We note that in the briefing of WRCOG's demurrer, the parties all seem to have proceeded with the understanding that only the Sanchezes sought damages based on emotional distress. This understanding may have been based on the fact that the FAC's prayer for relief mentions emotional distress damages against WRCOG only as to the Sanchezes, although the FAC alleges more generally in another paragraph that "Plaintiffs" suffered emotional distress.

[8] In ruling on the demurrer, the trial court granted the request to take judicial notice of those documents.

Second, WRCOG argues that, pursuant to section 945.6, subdivision (a)(1) the FAC failed to state a claim for relief because the Zunigas filed suit more than six months after WRCOG mailed its Notice of Rejection.

Third, WRCOG argued that there were substantive deficiencies with both the financial elder abuse cause of action and the cancellation of contract cause of action, so that neither of those causes of action stated a cognizable claim against WRCOG.

In their opposition, the Zunigas addressed each of the grounds for demurrer. First, they argued that their claims against WRCOG were not moot because they still sought a ruling that the Assessment Agreement they entered into with WRCOG was void. The Zunigas explained that although WRCOG had repaid them and discharged the assessment lien, it had not cancelled the Assessment Agreement itself, and that agreement contained provisions, such as an indemnification clause, that continued in force. Second, they argued that, for multiple reasons, the six-month limitations period in the Government Claims Act did not apply to their causes of action against WRCOG. Third, they argued that WRCOG's substantive challenges to the financial elder abuse cause of action and the cancellation of contract cause of action lacked merit. The Zunigas also requested that, if the demurrer was sustained, that they be granted leave to amend. However, they did not specify how they would amend to overcome any of the grounds for demurrer advanced by WRCOG.

The trial court sustained the demurrer to the Zunigas' causes of action against WRCOG without leave to amend. The trial court rejected WRCOG's mootness argument, explaining that WRCOG had not addressed the Zunigas' argument that the indemnification clause in the Assessment Agreement remained in force. Next, the trial court concluded that (1) the six-month

9

limitations period in the Government Claims Act applied to the Zunigas' causes of action against WRCOG alleged in the FAC, and (2) the Zunigas' lawsuit against WRCOG was barred because it was filed outside of that six-month limitations period.  Finally, presumably because it concluded that the Zunigas' causes of action against WRCOG were time-barred, the trial court did not reach WRCOG's argument that neither the financial elder abuse cause of action nor the cancellation of contract cause of action, stated a cognizable claim against WRCOG.

The trial court subsequently entered a judgment of dismissal of the Zunigas' claims against WRCOG.  The Zunigas appeal from the judgment of dismissal.

II.

DISCUSSION

A.    *Legal Standards for Review of a Demurrer*

" 'On appeal from an order of dismissal after an order sustaining a demurrer, the standard of review is de novo:  we exercise our independent judgment about whether the complaint states a cause of action as a matter of law.' "  (*Villafana v. County of San Diego* (2020) 57 Cal.App.5th 1012, 1016.)  In reviewing the complaint, "we must assume the truth of all facts properly pleaded by the plaintiffs, as well as those that are judicially noticeable."  (*Howard Jarvis Taxpayers Assn. v. City of La Habra* (2001) 25 Cal.4th 809, 814.)

"We review a court's denial of leave to amend a complaint on sustaining a demurrer for abuse of discretion."  (*SLPR, L.L.C. v. San Diego Unified Port Dist.* (2020) 49 Cal.App.5th 284, 317.)  "This abuse of discretion is reviewable on appeal 'even in the absence of a request for leave to amend' [citation], and even if the plaintiff does not claim on appeal that the trial court abused its

10

discretion in sustaining a demurrer without leave to amend." (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 971 (*Aubry*).) The question is whether " ' "there is a reasonable possibility that the defect can be cured by amendment." ' " (*Ibid.*) "The burden of proving such reasonable possibility is squarely on the plaintiff." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

B.    *The Trial Court Properly Sustained the Demurrer on the Ground That the Zunigas Did Not File Their Lawsuit Against WRCOG Within Six Months of the Notice of Rejection of Their Claim*

1.    *Relevant Provisions of the Government Claims Act*

Under the Government Claims Act, subject to certain express exceptions,[9] no suit "for money or damages" may be brought against a public entity unless a written claim has first been presented to the entity and the claim either has been acted upon or is deemed to have been rejected. (§§ 905, 945.4; see also *DiCampli-Mintz v. County of Santa Clara* (2012) 55 Cal.4th 983, 990.) Once a public entity has delivered or mailed a notice of rejection of a claim, a claimant has only six months to commence a lawsuit against the public entity. (§ 945.6, subd. (a)(1).)

"The six-month statute of limitations for bringing suit is mandatory and must be strictly complied with. [Citation.] Failure to commence an action within the prescribed period constitutes a valid ground for dismissal,

---

9    Section 905 sets forth several exceptions to the requirement that a plaintiff must present a claim for money or damages to a public entity prior to filing a lawsuit. In the trial court, the Zunigas contended that the exception set forth in section 905, subdivision (h) applied. (§ 905, subd. (h) [setting forth an exception for "[c]laims that relate to a special assessment constituting a specific lien against the property assessed and that are payable from the proceeds of the assessment, by offset of a claim for damages against it or by delivery of any warrant or bonds representing it"].) The trial court concluded the exception was not applicable here. The Zunigas have not challenged that ruling on appeal.

11

absent waiver, estoppel or a tolling period." (*Julian v. City of San Diego* (1986) 183 Cal.App.3d 169, 176.) However, when the causes of action alleged in a lawsuit do not constitute a claim "for money or damages," for which a claim is required to be presented under the Government Claims Act, the six-month statute of limitations does not apply. (§ 945.8.) In that circumstance, the lawsuit "must be commenced within the time prescribed by the statute of limitations that would be applicable if the action were brought against a defendant other than a public entity." (*Id.*; see also *Cornejo v. Lightbourne* (2013) 220 Cal.App.4th 932, 943 [six-month limitations period did not apply because the relevant claim in the lawsuit was not subject to the claims presentation requirement of the Government Claims Act].)

2. *The Zunigas' Causes of Action Against WRCOG in the FAC Are Subject to the Claims Presentation Requirement Because They Allege Claims for Money or Damages*

The Zunigas do not dispute that they failed to file suit within six months after WRCOG mailed the Notice of Rejection. As we have explained, WRCOG's Notice of Rejection was mailed on February 26, 2020, and the Zunigas' lawsuit was filed almost a year later, on February 19, 2021.

However, the Zunigas contend that the six-month limitations period does not apply to their causes of action against WRCOG in the FAC because those causes of action do not seek "money or damages" (§§ 905, 945.4), and thus are not subject to the claims presentation requirement of the Government Claims Act. Specifically, the Zunigas contend that the FAC "did not seek tort damages (or any other damages) against [WRCOG]" but rather sought only "declaratory and injunctive relief relating to the assessment agreements." The argument lacks merit.

A suit seeking "money or damages" within the meaning of the Government Claims Act (§§ 905, 945.4) "includes *all* actions where the

12

plaintiff is seeking monetary relief." (*Sparks v. Kern County Bd. of Supervisors* (2009) 173 Cal.App.4th 794, 798, italics added.) " '[T]he claims presentation requirement applies to all forms of monetary demands, regardless of the theory of the action.' " (*Nasrawi v. Buck Consultants LLC* (2014) 231 Cal.App.4th 328, 338 (*Nasrawi*).) It is well established that the references to " 'money or damages' now found in sections 905 and 945.4 were always intended to embrace *contract* as well as *tort* claims." (*City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, 740, italics added (*City of Stockton*).) Further, even if the Zunigas characterize their claims in the FAC as seeking declaratory or injunctive relief to recover the assessment payments, "[a]ctions for restitution or reimbursement are subject to the claim requirements." (*Sparks,* at p. 799.)

As we have detailed above, the FAC alleges that the Zunigas suffered damages and pecuniary loss as a result of the Assessment Agreement with WRCOG. Further, the FAC specifically prays for monetary relief in the form of an order requiring that "WRCOG repay the amounts paid by the Zunigas for the assessments from the assessment proceeds." Although " ' "the theory of the action" ' " (*Nasrawi, supra,* 231 Cal.App.4th at p. 338) against WRCOG in the FAC is based on relief from a contractual agreement and the Zunigas characterize the FAC as asserting claims for declaratory or injunctive relief, the FAC indisputably seeks an order requiring that WRCOG *pay money* to the Zunigas by, at a minimum, refunding the assessment payments. The fact that the Zunigas were seeking monetary relief from WRCOG in the FAC is underscored by the subsequent factual development of WRCOG *actually paying* the amount of $8,444.80 to the Zunigas. Accordingly, the Zunigas were required to file a lawsuit seeking that relief within six months of WRCOG's Notice of Rejection.

13

The Zunigas rely on section 814 to argue that a claim for liability based *on contract* is not subject to the claims presentation requirement. However, our Supreme Court has squarely rejected that argument. Specifically, section 814 provides, "Nothing in this part [i.e., the Government Claims Act] affects liability based on contract or the right to obtain relief other than money or damages against a public entity or public employee." (§ 814.) As our Supreme Court has explained, "section 814 pertains only to *immunity* from liability, and has no effect on the *claims requirements*." (*City of Stockton*, *supra*, 42 Cal.4th at p. 740, italics added.) "Section 814 simply reaffirms the longstanding rule that governmental immunity does not encompass contractual liability. . . . That proposition has no necessary connection to the requirement that a claim be presented before suit is filed. Prior notice of claims serves the purpose of facilitating investigation and possible settlement, whether or not the public entity would otherwise be immune from liability." (*City of Stockton*, at p. 741.)

The Zunigas also argue that no claim was required to be presented pursuant to section 815.6. That provision states, "Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty." (§ 815.6.) The Zunigas argue that Welfare and Institutions Code section 15600 imposed a mandatory duty on WRCOG to protect elderly and dependent adults from financial abuse, and that, in entering into to the Assessment Agreement with the Zunigas, WRCOG breached that duty.

14

We reject the Zunigas' attempt to rely upon section 815.6 to establish the FAC's causes of action against WRCOG are not subject to the claims presentation requirement of the Government Claims Act. On its face, section 815.6 does nothing more than set forth *a theory of liability* against public entities based on the existence of a mandatory statutory duty. Just like section 814, section 815.6 has nothing to do with the claims presentation requirement. Further, as we have explained, " '[t]he claims presentation requirement applies to *all forms* of monetary demands, regardless of the theory of the action.' " (*Nasrawi, supra,* 231 Cal.App.4th at p. 338, italics added.) The inquiry is whether the lawsuit *seeks* "money or damages," not what the *theory of liability* is. (§§ 905, 945.4.) Accordingly, when the "the primary outcome sought" in a lawsuit is "*not* money or damages, but an order compelling performance of a mandatory duty," the claims presentation requirement *does not* apply. (*Board of Administration v. Wilson* (1997) 52 Cal.App.4th 1109, 1125, italics added.) However, when, as here, a claim based on a theory of mandatory duty *does* seek money or damages, the plaintiff must first present a claim to the public entity. (*Canova v. Trustees of Imperial Irrigation Dist. Employee Pension Plan* (2007) 150 Cal.App.4th 1487, 1493.)

In sum, the trial court properly sustained WRCOG's demurrer to the causes of action that the Zunigas alleged against it in the FAC because the Zunigas failed to file their lawsuit within six months of WRCOG's mailing of the Notice of Rejection.[10]

---

10    Because we conclude that the trial court properly sustained the demurrer to the FAC on the ground that the Zunigas filed suit more than six months after WRCOG's Notice of Rejection, we need not, and do not, address whether there is any merit to the other bases for WRCOG's demurrer to the FAC that the trial court did not rule upon.

C.      *The Trial Court Abused Its Discretion in Denying Leave to Amend*

The final issue we address is whether the trial court abused its discretion by denying leave to amend. As we have explained, a trial court abuses its discretion in denying leave to amend when " ' "there is a reasonable possibility that the defect can be cured by amendment." ' " (*Aubry, supra,* 2 Cal.4th at p. 971.)

The Zunigas argued in their opening appellate brief that the trial court abused its discretion because it did not grant leave to amend. However, the Zunigas did not specifically focus on the significance of the recent factual developments, namely, WRCOG's discharge of the assessment lien and refund of the assessment payments to the Zunigas. We asked the parties to provide supplemental briefing addressing how those factual developments impact the analysis of whether leave to amend should have been granted.

Having reviewed the supplemental briefing, we conclude that there is a reasonable possibility that the Zunigas will be able to amend their pleadings to overcome the basis on which WRCOG's demurrer to FAC was sustained. As we have detailed, the demurrer was sustained based on the premise that the FAC sought money or damages from WRCOG, triggering the application of the six-month limitations period in the Government Claims Act. (§ 945.6, subd. (a)(1).) The Zunigas explain in their supplemental briefing that due to WRCOG's refund of the assessment payments and discharge of the assessment lien, the relief they *currently* seek is limited to "cancellation of the assessment agreement and the indemnification clause."[11] If the Zunigas

_____

[11]     In explaining the relief against WRCOG that they will seek in an amended complaint, the Zunigas state that they will seek an award of attorney fees. A prayer for an award of attorney fees would not, in itself, trigger the application of the Government Claims Act. (*Lozada v. City and*

16

amend their pleadings to make clear that, due to current circumstances, they do not seek monetary relief against WRCOG, there is a reasonable possibility that, unlike the FAC, their amended pleading will not be subject to the six-month limitations period because it will not assert a claim for money or damages against WRCOG.[12]

WRCOG argues in its supplemental briefing that the Zunigas should be precluded from filing an amended complaint due to the sham pleading doctrine. Under the sham pleading doctrine, "[w]hen a plaintiff files an amended complaint, it may not 'omit harmful allegations . . . from previous complaints.' [Citations.] Unless the plaintiff provides a 'plausible' explanation for dropping the harmful allegations (such as the need to correct a mistaken allegation or to clarify ambiguous facts), the trial court will take judicial notice of the harmful allegations and disregard the new and contrary allegations." (*Smyth v. Berman* (2019) 31 Cal.App.5th 183, 195.) The sham pleading doctrine " 'is intended to enable courts " 'to prevent an abuse of process.' " [Citation.]' " (*Larson v. UHS of Rancho Springs, Inc.* (2014)

---

*County of San Francisco* (2006) 145 Cal.App.4th 1139, 1160 ["recovery of attorney fees . . . are not a separate item of monetary relief or damages to which the Government Claims Act applies" as they are "defined as costs, not damages" and thus a "claim for attorney fees cuts neither for nor against application of the claim filing requirement as to the action as a whole"].)

[12] Although contrary to WRCOG's apparent assumption throughout the litigation that the Zunigas do not seek emotional distress damages against it in the FAC (see fn. 7, ante), for the first time in its supplemental letter brief WRCOG appears to interpret the FAC as stating that the Zunigas *are* seeking emotional distress damages. As we have noted, the FAC is somewhat unclear on that issue due to the use of the collective term "Plaintiffs." (See fn. 7, ante.) If the Zunigas do not intend to seek emotional distress damages against WRCOG, they should clearly specify that position in any amended complaint that they file.

230 Cal.App.4th 336, 344.) "Plaintiffs therefore may avoid the effect of the sham pleading doctrine by alleging an explanation for the conflicts between the pleadings." (*Ibid.*) WRCOG argues that the sham pleading doctrine applies because an amended complaint seeking only limited nonmonetary relief would "completely contradict [the Zunigas'] original pleadings in which they are alleging pecuniary loss and other damages as a result of the PACE Assessment Agreement." The argument fails because there is an obvious good-faith explanation for the Zunigas' proposed amendment to delete their prayer for monetary relief against WRCOG. Specifically, during the pendency of the litigation, WRCOG discharged the assessment lien and refunded all of the Zunigas' assessment payments.

Further, WRCOG contends that leave to amend should be denied because the Zunigas were "dilatory" in amending their pleadings to specify that they no longer seek money or damages from WRCOG. According to WRCOG, it discharged the assessment lien and refunded the assessment payments "on or around June 22, 2023," which was *before* the Zunigas filed the FAC on June 28, 2021. WRCOG argues that the FAC should have specified that the Zunigas already received a refund and therefore did not seek monetary relief. We reject the argument because the documents in the record do not support WRCOG's statement that the Zunigas received a refund of the assessment payments before they filed the FAC. Specifically, the record contains a letter from WRCOG to counsel for the Zunigas dated one day *after* the FAC was filed. That June 29, 2021 letter states, "included with this letter please find the following, [¶] 1. A check in the amount of $8,444.80 fully refunding property tax payments made by the property owner on the assessment." The Zunigas, therefore, have not had an opportunity to attempt to amend their pleadings to specify that, based on changed

18

circumstances, they have no basis on which to seek money or damages against WRCOG.

In sum, we conclude that there is a reasonable possibility that the Zunigas will be able to amend their pleadings to remedy the basis for the trial court's order sustaining the demurrer to the FAC.[13] The trial court accordingly abused its discretion by failing to grant leave to amend.

## DISPOSITION

The judgment of dismissal is reversed, and this matter is remanded for proceedings consistent with this opinion. The parties shall bear their own costs on appeal.

IRION, J.

WE CONCUR:

O'ROURKE, Acting P. J.

KELETY, J.

---

[13] Although, in their supplemental briefing, the Zunigas generally describe the relief against WRCOG that they propose to seek in an amended complaint, we express no view on whether any amended complaint that the Zunigas ultimately file might still be subject to demurrer on the ground that it does, in fact, persist in seeking money or damages against WRCOG or that any of the causes of action fail to state a claim for relief.

19