Filed 1/22/14; pub. order 2/13/14 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| WILLIAM MEYERS,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>THE RETIREMENT FUND OF THE<br>FED. CITY EMPLOYEES,<br><br>    Defendant and Respondent. | H037933<br>(Santa Clara County<br>Super. Ct. No. 1-11-PR169420) |

Plaintiff William Meyers, a former City of San Jose employee, petitioned under Probate Code sections 15642 and 17200[1] for an order removing certain trustees of defendant The Retirement Fund of the Federated City Employees (Retirement Fund), the retirement system for the City of San Jose.  The superior court dismissed the petition on the grounds the Retirement Fund is expressly excluded from the definition of a "trust" under section 82, and thus a petition to remove trustees under the Probate Code may not be maintained against it.

On appeal, Meyers argues the judgment must be reversed, despite the exclusionary language of section 82, because:  (1) the California Constitution mandates that "[t]he assets of a public pension or retirement system are trust funds" (Cal. Const., art. XVI, § 17, subd. (a) (section 17)); and (2) section 15003, subdivision (c) (section 15003(c)) specifically allows for the application of trust law to public pension funds.

_____

    [1] Further unspecified statutory references are to the Probate Code.

We disagree and shall affirm the judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND[2]

### A. *Verified petition to remove trustees*

In August 2011, Meyers filed his verified petition to remove trustees (Sup. Ct. Santa Clara County, 2011, No. 1-11-PR-169420). In that petition, Meyers alleged he began working for the City of San Jose as an associate construction inspector in 2001, remaining in that position for approximately four years. In February 2003, he was injured in the course and scope of his employment and underwent cervical fusion surgery.

In September 2009 and April 2010, Meyers applied to the Retirement Fund for service-connected disability retirement benefits, submitting the opinions of "at least eighteen (18) different medical professionals, all of whom were in agreement" that Meyers was disabled as a consequence of the injury he suffered in 2003. The physician paid by the City of San Jose to evaluate disability claims, however, did not agree and the Retirement Fund denied Meyers' applications.[3]

In his petition, Meyers claimed the Retirement Fund trustees have breached their fiduciary duties to him and other beneficiaries "by unreasonably delaying the beneficiary claim process, by refusing to consider relevant medical evidence, by withholding information from beneficiaries, and by essentially 'rubber-stamping' the opinion of the City [of San Jose] physician and disregarding all other competent evidence regarding the service-connected disabilities of beneficiaries." Meyers alleged the trustees are refusing

[2] For the purposes of this appeal, we derive the facts from the allegations of Meyers' verified petition to remove trustees (Sup. Ct. Santa Clara County, 2011, No. 1-11-PR-169420) and other documents contained in the record.

[3] The record on appeal in this case includes a copy of Meyers' July 15, 2010 petition for writ of administrative mandate (Sup. Ct. Santa Clara County, 2011, No. 1-10-CV-177077; hereafter, Case No. 177077) seeking to overturn the Retirement Fund's decision denying his application for disability retirement. According to Meyers, the petition in Case No. 177077 is the subject of a separate appeal (H038351) pending before this court.

2

to disburse benefits to disabled City of San Jose employees "because the City's current budget crisis has made it politically unpopular to award disability pensions." Meyers further alleged, on information and belief, that in 2000, the Retirement Fund trustees approved six out of seven disability retirement applications, but in 2010 and 2011, only two out of 14 applicants were approved for disability retirement.

In his prayer for relief, Meyers sought: (1) an order removing certain named Retirement Fund trustees, specifically Matt Loesch, Edward F. Overton, Arn Andrews, Michael Armstrong, Lara Druyan, Stuart Odell and Martin Dirks; (2) an order appointing a receiver or temporary trustee to administer the trust until new trustees are appointed; and (3) attorney fees and costs.

### B.    Ex parte application and opposition

In November 2011, in connection with the petition to remove trustees, Meyers brought an ex parte application for an order requiring the Retirement Fund to provide notice of hearing to all the beneficiaries. In that application, Meyers stated he is not aware of the names and addresses of the beneficiaries to the Retirement Fund, each of whom is entitled to notice of hearing on his petition to remove the trustees. Accordingly, the Retirement Fund, which has the necessary contact information, should be ordered to provide the required notice.

The Retirement Fund opposed the ex parte application, and in that opposition further argued Meyers' petition should be dismissed because, among other reasons, the Retirement Fund is not a trust under section 82, subdivision (b)(13) (section 82(b)(13)),[4] thus the court lacked jurisdiction over the matter. The trial court set a hearing on the jurisdictional issue, and gave Meyers an opportunity to brief the matter.

---

[4] Section 82, subdivision (b) provides in relevant part: " 'Trust' excludes the following: [¶] . . . [¶] (13) Trusts for the primary purpose of paying debts, dividends, interest, salaries, wages, profits, *pensions, or employee benefits of any kind.*" (Italics added.)

3

At the hearing, Meyers contended section 15003(c)[5] specifically allows for the application of trust law to pension funds, despite the fact that pension funds are otherwise excluded from the definition of a trust by operation of section 82(b)(13).  The trial court found, however, that the Retirement Fund was not a trust "for the purposes of application of the Probate Code," relying on the exclusionary language of section 82, and dismissed Meyers' petition.

Meyers timely appealed.

## II.    DISCUSSION

### A.    Standard of review

In this appeal, we examine the scope and application of certain statutes, specifically sections 82 and 15003, as well as section 17 of the California Constitution. Questions of statutory interpretation are subject to de novo review.  (*California Teachers Assn. v. San Diego Community College Dist.* (1981) 28 Cal.3d 692, 699.)  That review is guided by settled rules, all of which are designed to ascertain the intent of the lawmakers and avoid an interpretation that would lead to absurd consequences.  (*Cypress Semiconductor Corp. v. Superior Court* (2008) 163 Cal.App.4th 575, 581.)

We begin with the statutory language, giving the words their usual and ordinary meaning.  (*Day v. City of Fontana* (2001) 25 Cal.4th 268, 272.)  "If [the statutory language] is clear and unambiguous our inquiry ends.  There is no need for judicial construction and a court may not indulge in it."  (*Diamond Multimedia Systems, Inc. v. Superior Court* (1999) 19 Cal.4th 1036, 1047.)  We must also "if possible, . . . give effect and significance to every word and phrase of a statute."  (*Garcia v. McCutchen* (1997) 16

---

[5] Section 15003(c) provides:  "Nothing in this division or in Section 82 is intended to prevent the application of all or part of the principles or procedures of this division to an entity or relationship that is excluded from the definition of 'trust' provided by Section 82 where these principles or procedures are applied pursuant to statutory or common law principles, by court order or rule, or by contract."

Cal.4th 469, 476.)  When two provisions touch upon a common subject, "we must construe them 'in reference to each other, so as to "harmonize the two in such a way that no part of either becomes surplusage." ' " (*Ibid*., quoting *DeVita v. County of Napa* (1995) 9 Cal.4th 763, 778-779.)  "We must presume that the Legislature intended 'every word, phrase and provision . . . in a statute . . . to have meaning and to perform a useful function.' " (*Garcia v. McCutchen*, *supra*, at p. 476, quoting *Clements v. T. R. Bechtel Co*. (1954) 43 Cal.2d 227, 233.)

> B.    *The Retirement Fund is not subject to the trust law for purposes of petitions to remove trustees for breach of fiduciary duty*

Section 82, which the trial court relied on in dismissing Meyers' petition is found in part 2 of division 1 of the Probate Code, a part entitled "Definitions,"[6] and defines the word "trust" as used in the Probate Code.  Pursuant to section 82, subdivision (a), the word "trust" includes:  "(1) An express trust, private or charitable, with additions thereto, wherever and however created[; and] (2) A trust created or determined by a judgment or decree under which the trust is to be administered in the manner of an express trust."  Section 82, subdivision (b), provides in pertinent part:  " 'Trust' excludes the following: [¶] . . . [¶] (13) Trusts for the primary purpose of paying debts, dividends, interest, salaries, wages, profits, pensions, or employee benefits of any kind."

Because the Retirement Fund is a pension plan, the plain language of section 82(b)(13) would appear to foreclose any attempt to subject it to the Probate Code.  The trial court found this to be the case and duly dismissed Meyers' petition.

As he did below, Meyers asserts that, notwithstanding the express language of section 82, the trust law is applicable to public pensions by operation of the California

---

[6] Section 20 provides "[u]nless the provision or context otherwise requires, the definitions in this part [i.e., Part 2] govern the construction of this code."

5

Constitution (specifically section 17) and section 15003(c). We examine each of these provisions in turn.

### 1. *Section 17*

Section 17 grants retirement boards of public pension systems "sole and exclusive fiduciary responsibility over the assets of the public pension or retirement system[; . . . and] sole and exclusive responsibility to administer the system in a manner that will assure prompt delivery of benefits and related services to the participants and their beneficiaries." (Cal. Const., art. XVI, § 17, subd. (a).) It further provides that "[t]he assets of a public pension or retirement system are trust funds and shall be held for the exclusive purposes of providing benefits to participants in the pension or retirement system and their beneficiaries and defraying reasonable expenses of administering the system." (*Ibid*.)

Section 17 also directs how a retirement board should employ its plenary authority. For example, a retirement board must exercise its duties in the interest of participants and beneficiaries, minimizing employer contributions, and defraying reasonable expenses of administering the system. (Cal. Const., art. XVI, § 17, subd. (b).) Additionally, a retirement board must diversify the investments of the system so as to minimize the risk of loss and maximize the rate of return. (*Id*., art. XVI, § 17, subd. (d).) The legislature may prohibit certain investments by a retirement board in the public interest. (*Id*., art. XVI, § 17, subd. (g).)

Meyers reads section 17's phrase "[t]he assets of a public pension or retirement system are trust funds" as a constitutional mandate overriding the statutory language of section 82. We disagree.

In his brief, Meyers argues there is no need to examine the history of section 17, because the plain meaning of its reference to public pension assets as "trust funds" is clear. The problem with this approach is that, while the dictionary definition of the word "trust" may be clear, its meaning under the Probate Code is not. For example, a number

6

of entities which bear the name "trusts" are, in fact, expressly excluded from the definition of "trust" under the Probate Code. Among the "trusts" that are not "trusts" pursuant to section 82, subdivision (b) are: "[c]onstructive trusts . . ." (§ 82, subd. (b)(1)), "[b]usiness trusts . . ." (*id.*, subd. (b)(6)), "[i]nvestment trusts . . ." (*id.*, subd. (b)(7)), "[c]ommon trust funds" (*id.*, subd. (b)(8)), "[v]oting trusts" (*id.*, subd. (b)(9)), and "[l]iquidation trusts" (*id.*, subd. (b)(12)). Consequently, simply because something is referred to as a "trust" or as a "trust fund," even if that reference appears as part of the California Constitution, does not mean that entity or relationship is *necessarily* subject to the trust law provisions of the Probate Code.

Accordingly, we turn to the history of section 17 and the reasons expressed in support of its addition to the California Constitution. Section 17's reference to public pension assets as "trust funds" was added to the California Constitution in 1984 by the passage of Proposition 21. (*Claypool v. Wilson* (1992) 4 Cal.App.4th 646, 674 (*Claypool*).) The intent of this ballot measure was to "give public pension assets full constitutional protection as trust funds" and "guarantee[] that neither the Governor nor future Legislatures will ever be able to use this money for other purposes." (Ballot Pamp., argument in favor of Prop. 21 Prim. Elec. (June 5, 1984) p. 26.) Under Proposition 21, "the only purpose for which these trust assets can be used is the delivery of retirement benefits." (*Ibid.*, italics omitted.) The measure's proponents argued the constitutional amendment would "[e]nact[] the sole and exclusive purpose rule which imposes on fund trustees the legal obligation to perform their duties solely in the interest of plan beneficiaries." (*Ibid.*, italics omitted.)

There is no mention, however, of either trust law or the Probate Code in the ballot pamphlet issued to voters in connection with Proposition 21. The bulk of section 17, in fact, provides guidance for retirement boards in administering pension funds and clarifies their fiduciary obligations to plan members and beneficiaries. When read as a whole, particularly in light of the ballot arguments made both for and against Proposition 21, the

7

intent behind its characterization of public pension assets as "trusts" was not to override the exclusionary language of section 82(b)(13).  Instead, the intent was to impose fiduciary obligations on retirement boards in relation to their administration of pension funds, as well as protect those assets from appropriation or diversion by the Governor or the Legislature.

Meyers' reliance on *Claypool* to support his constitutional argument is unavailing. In *Claypool*, members of the state's Public Employees' Retirement System (PERS) challenged certain statutory provisions governing the administration of the PERS system including a provision that assigned the retirement board's actuarial duties to an outside actuary appointed by the Governor.  (*Claypool*, *supra*, 4 Cal.App.4th at pp. 652-653.) The members argued that such an assignment would violate section 17 "which declares that PERS assets are trust assets." (*Claypool*, *supra*, at p. 661.)  According to the members, the terms of section 17 "constitutionalize[d] the law of trusts," and the Legislature's attempt to assign the board's actuarial functions to an outside actuary presents a conflict of interest that would preclude the actuary from acting as a fiduciary to the beneficiaries of PERS.  (*Claypool*, *supra*, at p. 675.)  The *Claypool* court, after first adopting the members' assumption about the application of trust law, rejected their conflict of interest argument, finding there were sufficient safeguards to ensure that an actuary was not inappropriately influenced or controlled by the Governor and could exercise fiduciary duties.  (*Id*., at pp. 677-678.)

As noted above, the *Claypool* court assumed, as urged by the petitioners in that case, that "[S]ection 17[] imports the existing law of trusts," but undertook no analysis to support that assumption.  (*Claypool*, *supra*, 4 Cal.App.4th at p. 676.)  It did not discuss section 82's exclusion of pensions from the definition of "trust" under the Probate Code let alone attempt to reconcile any conflict between that statute and section 17.  It simply applied principles of trust law to reject the members' claim that the transfer of actuarial duties from PERS itself to an actuary appointed by the Governor created a categorical

8

conflict of interest. Accordingly, we do not find *Claypool* instructive nor are we bound by the dicta contained therein.

### 2. *Section 15003*

We now examine section 15003 to determine if, as Meyers contends, that statute operates to overcome the exclusionary language of section 82. Section 15003(c) provides, in pertinent part: "Nothing in this division or in Section 82 is intended to prevent the application of all or part of the principles or procedures of this division to an entity or relationship that is excluded from the definition of 'trust' provided by Section 82 where these principles or procedures are applied pursuant to statutory or common law principles, by court order or rule, or by contract."

According to Meyers, the plain language of section 15003 allows for the application of trust law to things that would otherwise be excluded from the definition of "trust" by section 82.

In its brief, Retirement Fund makes a convoluted, and rather confusing, argument regarding the interpretation of section 15003. From what we can glean, Retirement Fund contends the language of section 15003 means "Trust Law may be applied to entities listed in Section 82[, subdivision] (b) only when a Section 82[, subdivision] (b) entity has some kind of bearing or relationship to a true 'trust' defined by Section 82[, subdivision] (a)," citing *Estate of Mullins* (1988) 206 Cal.App.3d 924 (*Mullins*). We fail to see how *Mullins* supports that proposition.

In *Mullins*, the petitioner, who was the niece of the decedent's predeceased husband, requested that the probate court impose a constructive trust on the assets of a trust that was created by the decedent. (*Mullins*, *supra*, 206 Cal.App.3d at pp. 925-926.) Though she was not named as a beneficiary to the decedent's trust, the niece argued she was entitled to a share of the trust's assets under the decedent's prior oral agreement. (*Id*., at p. 925.) The *Mullins* court held that the probate court lacked jurisdiction over the niece's lawsuit because the niece was not a beneficiary of the express trust created by the

9

decedent. (*Id*., at p. 931.) Probate jurisdiction was also lacking because the niece's claim was not a challenge to either the will or the trust created by the decedent, but was instead a contractual claim unrelated to those instruments. (*Ibid*.) The court noted that under section 82, subdivision (b)(1), a constructive trust is not a "trust" under the trust law and also noted that section 15003, subdivision (a) provides " '[n]othing in this division affects the law relating to constructive . . . trusts.' " (*Mullins*, *supra*, at p. 931.) In dicta, the *Mullins* court further said that probate courts lack jurisdiction to impose equitable remedies, such as a constructive trust. (*Ibid*.)

In 1990, in response to this dicta in *Mullins*, the Legislature amended section 15003, subdivision (a) to clarify that there is no such limitation on the authority of a probate court to fashion appropriate remedies in proceedings under the trust law. (Cal. Law Revision Com. com., 54 West's Ann. Prob. Code (1991 ed.) foll. § 15003, p. 486.) Retirement Fund notes "even after the amendment, Section 15003 does not, by itself, provide for application of the Trust Law to Section 82[, subdivision] (b) entities absent some relationship to an entity that is properly subject to the Trust Law. This interpretation is confirmed by the fact that Section 82[, subdivision] (b) was not amended after *Mullins*." There are two problems with this interpretation of *Mullins*.

First, nowhere in *Mullins* can we find the holding advanced by Retirement Fund, i.e., "Trust Law may be applied to entities listed in Section 82[, subdivision] (b) only when a Section 82[, subdivision] (b) entity has some kind of bearing or relationship to a true 'trust' defined by Section 82[, subdivision] (a)." All *Mullins* decided was that an action to impose a constructive trust is not within the jurisdiction of the probate court because constructive trusts are excluded from the definition of a trust under section 82, subdivision (b)(1). It buttressed that holding by noting that section 15003, subdivision (a) expressly provided that the law relating to constructive trusts was not affected by trust law. (*Mullins*, *supra*, 206 Cal.App.3d at p. 931.)

10

Second, *Mullins* makes no mention of section 15003(c), the relevant subdivision in the instant case. Instead, the *Mullins* court addressed section 15003, subdivision (a), and thus offers limited instruction at best for assisting us in determining the interplay of section 15003(c) with section 82.

We are also not persuaded by Meyers' reading of section 15003(c).[7] His interpretation would have us focus exclusively on its expansionary language, and determine that it overrides the exclusionary language of section 82. We must however read the statute as a whole, and in so doing, it becomes clear that section 15003(c) is not unconditional. The statute allows for the application of trust law to "an entity or relationship that is excluded from the definition of 'trust' " (§ 15003(c)) by section 82, but *only* "pursuant to statutory or common law principles, by court order or rule, or by contract." (§ 15003(c).)

The Law Revision Commission comments to section 15003 supports this interpretation: "Subdivision (c) is included to avoid the implication that the provisions of the Trust Law cannot be applied to entities and relationships that are excluded from the definition of 'trust' as it is used in this division. The Trust Law, by its terms, governs trusts as defined in Section 82. Under Section 15003, the Trust Law is neutral on the question whether it may be applied to other types of entities and relationships, such as those excluded from the definition of 'trust' by subdivision (b) of Section 82. *The Trust*

---

[7] Meyers also devotes several paragraphs in his opening brief attacking the trial court's suggestion that section 15003 applies only to situations involving constructive and resulting trusts because the phrase "constructive and resulting trusts" appears in the statute's title. He (correctly) points out the phrase "constructive and resulting trusts" refers only to subdivision (a) of section 15003, and that the title includes the phrase "entity or relationship excluded from trust definition" to refer to subdivision (c). Regardless, the trial court's mistaken reliance on this phrase is of no moment. "Because we review the correctness of the order, and not the court's reasons, we will not consider the court's oral comments or use them to undermine the order ultimately entered." (*Whyte v. Schlage Lock Co*. (2002) 101 Cal.App.4th 1443, 1451.)

11

*Law is thus made available when it may appropriately be applied by statute*, *common law*, *court order or rule*, *or contract*." (Cal. Law Revision Com., com., 54 West's Ann. Prob. Code (1991 ed.) foll. § 15003, p. 486, italics added.)

Accordingly, for trust law to apply to Retirement Fund, at least in the context presented here where Meyers is seeking to remove trustees pursuant to sections 15642 and 17200, there must be some "statutory or common law principle[], . . . court order or rule, or . . . contract" allowing for its application. (§ 15003(c).) Meyers identified no such principle, order, rule or contract upon which a court could find a basis to apply trust law to the Retirement Fund.

Our interpretation of the statute thus avoids nullifying section 82, which would be the result were we to adopt Meyers' position. (*Hensel Phelps Construction Co. v. San Diego Unified Port Dist.* (2011) 197 Cal.App.4th 1020, 1034.)

Since neither section 17 nor section 15003(c) operate to override the exclusionary language of section 82(b)(13), the trial court properly dismissed Meyers' petition for an order pursuant to sections 15642 and 17200 removing certain Retirement Fund trustees.

### 3. *Standing and failure to exhaust administrative remedies*

Retirement Fund argues two alternative bases for dismissing Meyers' petition to remove trustees: (1) he lacks standing to seek such removal as he was not a member or beneficiary of the retirement system at the time he brought his petition; and (2) he failed to comply with the process for removal of trustees set forth in the City of San Jose Municipal Code, thus failing to exhaust his administrative remedy.

As we have determined that the trial court properly dismissed the petition on the ground that it lacked jurisdiction under the Probate Code, we need not and do not address these arguments herein.

## III.  DISPOSITION

The judgment is affirmed.  The Retirement Fund of the Federated City Employees shall recover its costs on appeal.

_____
Premo, J.

WE CONCUR:


_____
Rushing, P.J.


_____
Elia, J.

13

Filed 2/13/14 Request for Publication granted

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| WILLIAM MEYERS,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>THE RETIREMENT FUND OF THE<br>FED. CITY EMPLOYEES,<br><br>    Defendant and Respondent. | H037933<br>(Santa Clara County<br>Super. Ct. No. 1-11-PR169420) |

BY THE COURT:

    The opinion which was filed on January 22, 2014, is certified for publication.

 

_____
Premo, J.


_____
Rushing, P.J.


_____
Elia, J.

    The written opinion which was filed on January 22, 2014, has now been certified for publication pursuant to rule 8.1105(b) of the California Rules of Court, and it is therefore ordered that the opinion be published in the official reports.


Dated: _____       _____
                                         Rushing, P.J.

| Trial Court: | Santa Clara County Superior Court<br>Superior Court No. 1-11-PR169420 |
|---|---|
| Trial Judge: | Hon. Thomas W. Cain |
| Counsel for Plaintiff/Appellant:<br>William Meyers | Gates Eisenhart Dawson<br>Nicholas G. Emanuel |
| Counsel for Defendant/Respondent:<br>The Retirement Fund of the Federated<br>City Employees | Office of the City Attorney<br>Richard Doyle, City Attorney<br>Nora Frimann, Assistant City Attorney<br>Margo Laskowska, Sr. Deputy City<br>Attorney<br>Elisa T. Tolentino, Deputy City<br>Attorney |

Meyers v. The Retirement Fund of the Fed. City Employees
H037933