Filed 10/29/19

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| PATRICK J. HODGES, | C084020 |
| Plaintiff and Appellant, | (Super. Ct. No. SCV0036599) |
| v. | |
| COUNTY OF PLACER et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Placer County, Michael A. Jacques, Court Commissioner. Affirmed.

Patrick J. Hodges, In pro. per. for Plaintiff and Appellant.

Gregory S. Warner, Placer County Counsel's Office for Defendants and Respondents.

Defendant County of Placer sold plaintiff Patrick J. Hodges's real property at a tax sale. The County later paid plaintiff the excess proceeds remaining from the sale less

1

payments made to others. Plaintiff contends the County, its board of supervisors, and its treasurer breached a fiduciary duty they owed him, and converted his personal property, when they did not audit a payment made from the proceeds to others and did not pay him interest or earnings on its investment of the proceeds while it held them in trust.

The trial court sustained the County's demurrer to plaintiff's second amended complaint without leave to amend and entered a judgment of dismissal. We affirm the judgment.

## FACTS AND PROCEEDINGS

We derive the facts from plaintiff's second amended complaint. We assume them to be true. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

In 2001, Wesley Holdings Ltd., a partnership in which plaintiff was the general partner, purchased real property in Granite Bay that included a single-family home. Plaintiff lived in the home pursuant to an agreement for equitable servitude between him and the partnership. Plaintiff has subrogation rights to pursue claims held by the partnership.

On October 3, 2012, the County sold the property at a tax sale for $530,000. The tax deed was recorded on December 5, 2012. Plaintiff petitioned the County to rescind the tax sale, but the County refused.

On June 20, 2014, plaintiff received a warrant from the County in the amount of $437,096.16 as payment for excess proceeds from the tax sale of his property. Of the $92,903.84 not returned by the County from the sale, approximately $37,000 went to delinquent property taxes, $45,300 went to other charges and expenses which the County did not explain, and $10,603.84 was paid to the purchaser to compensate for plaintiff's occupying the property through July 2013.

Plaintiff filed a claim against the County for damages. The County denied the claim.

Plaintiff filed a complaint against the County but did not serve it. He filed and served a first amended complaint, but the trial court sustained the County's demurrer with leave to amend. He filed a second amended complaint, but the County refused to accept service. Without serving the second amended complaint, plaintiff filed a third amended complaint without leave of court that added a defendant and an additional cause of action. On the County's motion, the trial court struck the third amended complaint as unauthorized and ordered plaintiff to serve the second amended complaint.

In the second amended complaint, plaintiff alleged causes of action for breach of fiduciary duty and conversion. He contended the County committed these torts by not auditing its payment of $45,300 and by not paying him interest or a return on its investment of the excess proceeds. He also sought punitive damages for malice.

The County filed a demurrer against the second amended complaint. At the same time, plaintiff filed a motion for leave to file a third amended complaint.

In 2016, the trial court denied plaintiff's motion for leave, and it sustained the County's demurrer without leave to amend. It denied plaintiff leave to file an amended complaint because leave would highly prejudice the County. Plaintiff's continuous filings and changing theories caused confusion and forced the County to incur additional fees and costs. His proposed complaint did not remedy the prior deficiencies, and it was replete with argument and conclusory statements instead of ultimate facts.

The court sustained the County's demurrer due to plaintiff's failure to state a claim. Plaintiff could not state a claim for breach of a fiduciary relationship because no such relationship existed between him and the County. Even if a fiduciary relationship existed, plaintiff did not allege any breach or any damages arising from a breach.

The court also found plaintiff could not state a claim for conversion. He did not allege the County committed a wrongful act in withholding the excess proceeds or that it interfered with his possession of the proceeds.

As part of ruling on the demurrer, the trial court denied plaintiff leave to amend. Plaintiff had not shown he was able to state a cause of action.

## DISCUSSION

Plaintiff contends the trial court erred when it (1) struck his third amended complaint; (2) sustained the demurrer to his second amended complaint; and (3) denied leave to file a third amended complaint. We disagree.

### I

*Striking the Third Amended Complaint*

Plaintiff contends the trial court erred when it struck his third amended complaint. He asserts the court struck the complaint because he had not served his second amended complaint. He argues that because the County had refused to accept service and had not at that time filed an answer or demurrer to his second amended complaint, he was entitled under Code of Civil Procedure section 472 to file the third amended complaint as a matter of right. In other words, plaintiff contends he was entitled to file an amended pleading as a matter of right before a defendant files an answer to each pleading.

Plaintiff is incorrect. Plaintiff was authorized to amend without leave of court only once. He exercised that right when he filed his first amended complaint. After he filed that amended pleading and the trial court heard and sustained the demurrer against it, he lost any right to file another pleading in this action without leave of court.

"A party may amend its pleading *once* without leave of the court at any time before the answer, demurrer . . . is filed, or after a demurrer . . . is filed but before the demurrer . . . is heard if the amended pleading is filed and served no later than the date for filing an opposition to the demurrer. . . ." (Code Civ. Proc., § 472, subd. (a), italics added.)

" '[A] litigant does not have a positive right to amend his pleading after a demurrer thereto has been sustained. "His leave to amend afterward is always of grace,

4

not of right. [Citation.]" [Citation.]' (*Gautier v. General Tel. Co.* (1965) 234 Cal.App.2d 302, 310.) Under [Code of Civil Procedure] section 472, a plaintiff may only amend as a matter of course before an answer or demurrer is filed or before trial of the issue of law raised in the demurrer. At that point 'the plaintiff's right to amend as a matter of course is gone.' (*Loser v. E.R. Bacon Co.* (1962) 201 Cal.App.2d 387, 389.) After expiration of the time in which a pleading can be amended as a matter of course, the pleading can only be amended by obtaining the permission of the court. (See [Code Civ. Proc.,] §§ 472, 473; *People ex. rel. Dept. of Pub. Wks. v. Clausen* (1967) 248 Cal.App.2d 770, 783.)" (*Leader v. Health Industries of America, Inc.* (2001) 89 Cal.App.4th 603, 612-613.)

Because plaintiff had already amended his original complaint as a matter of right, the trial court correctly struck his third amended complaint as filed without leave of court.

II

*Sustaining the Demurrer to the Second Amended Complaint*

Plaintiff contends the second amended complaint sufficiently pleaded causes of action for breach of fiduciary duty and conversion. It did not.

A.    *Breach of fiduciary duty*

1.    *Background*

The Revenue and Taxation Code directs how counties receive and distribute proceeds from a tax sale of real property. Immediately after the sale, the tax collector deposits the sale proceeds "like tax collections[.]" (Rev. & Tax. Code, § 3718, statutory section references that follow are to the Revenue and Taxation Code unless otherwise noted.) After depositing certain sale costs in the general fund, the county deposits all of the proceeds in "the delinquent tax sale trust fund" for distribution. (§ 3719.) In general, the county first distributes sums to its general fund for its costs of publishing and

5

recording the sale notice. (§§ 4672.1, 4672.2, 4673.) Next, it distributes to taxing authorities the amounts required to redeem the property from tax default. (§ 4673.1, subd. (a).) Then the county distributes the amount necessary to satisfy current taxes, assessments, and penalties. (§ 4673, subd. (b).)

The county retains any excess proceeds in the delinquent tax sale trust fund. (§ 4674.) It does so to allow parties of interest in the property to claim them. Specifically, it retains the excess proceeds "on account of, and may be claimed by parties of interest in the property as provided in, Section 4675," the statute that establishes the procedure for those parties to make their claims. (§ 4674.)

Under that procedure, the county, no later than 90 days after the tax sale, must notify interested parties by mailed written notice of their right to claim excess proceeds in proportion to their former interest in the property. (§ 4676, subd. (a).) Parties who had an interest in the sold property may file a claim for a share of the excess proceeds up to one year following the recordation of the tax deed. (§ 4675, subd. (a).)

After the one-year period expires, the board of supervisors will distribute the excess proceeds to claimants according to priorities established by statute. (§ 4675, subd. (e).) Proceeds are first distributed to any claimant who held a recorded lien on the property at the time of sale. After that, proceeds are distributed to claimants who owned a recorded interest in the property at the time of sale. (§ 4675, subd. (e).) After meeting these claims, the county may transfer any unclaimed excess proceeds to its general fund. (§ 4674.)

In this matter, the County sold the property for $530,000. It recorded the tax deed for the sale on December 5, 2012. As noted above, plaintiff received payment on his claim for the excess proceeds on June 20, 2014, in the amount of $437,096.16. Of the $92,903.84 not returned by the County from the sale, approximately $37,000 went to delinquent taxes, $45,300 went to other charges and expenses which the County did not explain, and $10,603.84 was paid to the property's purchaser for plaintiff's occupancy.

6

Plaintiff alleged the County breached its fiduciary duty to him. He claimed the County owed him a fiduciary duty because it was required to hold the excess proceeds from the tax sale in the delinquent tax sale trust fund for him. It breached that duty by (1) failing to audit and justify the expenditure of $45,300 above the amount owed in taxes; (2) not being a prudent investor of the excess proceeds on plaintiff's behalf; and (3) depositing the return on investment or interest on the excess proceeds in its general fund and refusing to deposit those amounts into the trust fund and ultimately pay them to him. We conclude the claim fails to state a cause of action.[1]

    2.    *Analysis*

" 'The elements of a cause of action for breach of fiduciary duty are the existence of a fiduciary relationship, its breach, and damage proximately caused by that breach. (*City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc*. (1998) 68 Cal.App.4th 445, 483.) Whether a fiduciary duty exists is generally a question of law. (*David Welch Co. v. Erskine & Tulley* (1988) 203 Cal.App.3d 884, 890.)' " (*Marzec v. Public Employees Retirement System* (2015) 236 Cal.App.4th 889, 915.)

"A fiduciary relationship is ' "any relation existing between parties to a transaction wherein one of the parties is in duty bound to act with the utmost good faith for the benefit of the other party. Such a relation ordinarily arises where a confidence is reposed by one person in the integrity of another, and in such a relation the party in whom the confidence is reposed, if he voluntarily accepts or assumes to accept the confidence, can

---

[1] In his opening brief, plaintiff claims the County breached its fiduciary duty by depositing *all* of the excess proceeds in its general fund instead of a trust account. Plaintiff did not make this allegation in his second amended complaint, so we disregard it. In the second amended complaint, plaintiff named the "California Delinquent Tax Sale Trust Fund" as a party and alleged it held the excess proceeds in an interest-bearing or investment account. Plaintiff alleged the county treasurer was the settlor and trustee of the trust fund.

take no advantage from his acts relating to the interest of the other party without the latter's knowledge or consent . . . ." ' (*Herbert v. Lankershim* (1937) 9 Cal.2d 409, 483; *In re Marriage of Varner* (1997) 55 Cal.App.4th 128, 141; see also *Rickel v. Schwinn Bicycle Co.* (1983) 144 Cal.App.3d 648, 654 [' "A 'fiduciary relation' in law is ordinarily synonymous with a 'confidential relation.' It is . . . founded upon the trust or confidence reposed by one person in the integrity and fidelity of another, and likewise precludes the idea of profit or advantage resulting from the dealings of the parties and the person in whom the confidence is reposed." '].)

"Traditional examples of fiduciary relationships in the commercial context include trustee/beneficiary, directors and majority shareholders of a corporation, business partners, joint adventurers, and agent/principal. [Citations.]" (*Wolf v. Superior Court* (2003) 107 Cal.App.4th 25, 29-30.)

The County's relationship with plaintiff does not bear the traditional characteristics of a fiduciary relationship. Generally, "[w]here the payment of money is intended to create a trust, the payor (trustor-beneficiary) retains the beneficial interest in the money paid . . . ." (*Petherbridge v. Prudential Sav. & Loan Assn.* (1978) 79 Cal.App.3d 509, 517.) Ordinarily, the trustee also may not offset the money paid against the debts owing to him in his individual capacity. (*Ibid.*)

These traits do not describe the County and plaintiff's relationship. Plaintiff lost all legal and beneficial title to his property due to the tax sale, and thus at no time did he intentionally repose with the County any kind of trust or confidence for the County to manage his property solely for his best interest. The County held the sale proceeds in the trust fund to accommodate the interests of all taxing entities and lienholders of the property before it could distribute proceeds to plaintiff or any other person who had owned an interest in the property. And, of course, the County used the sale proceeds from the trust fund to offset the amount plaintiff owed it in taxes.

8

Plaintiff nonetheless asserts that because the statute required the County to deposit the excess proceeds in a "trust account," the County owed fiduciary duties to him requiring it to document and report the sums it took and unlawfully invested for its own account. While the distribution statutes did create a trust relationship, they did not establish the County as a trustee of a strict trust that owed the fiduciary duties plaintiff alleges.

"Courts have aptly noted in the context of deeds of trust that, ' "Just as a panda is not a true bear, a trustee of a deed of trust is not a true trustee." [Citation.]' (*Monterey S.P. Partnership v. W.L. Bangham, Inc.* (1989) 49 Cal.3d 454, 462.) The same can be said here, . . . ." (*McCann v. Lucky Money, Inc.* (2005) 129 Cal.App.4th 1382, 1398 (*McCann*).) Although the sale proceeds are deposited in a trust fund, that fact alone does not make the County a strict trustee.

"A special statute may create a trust or quasi-trust relationship to carry out a legislative object. (See Bus. & Prof. Code, § 7735 et seq. [funds deposited under 'preneed funeral arrangements' must be held in trust]; *IFS Industries v. Stephens* (1984) 159 Cal.App.3d 740, 750 [removal of trustee of preneed funeral trust]; Fin. Code, § 12000 et seq. [Check Sellers, Bill Payers and Proraters Law; funds received are 'trust funds' and must be deposited in 'trust account']; *Bank of America v. Bowden* (1956) 46 Cal.2d 863, 868 [funds are not subject to attachment or levy by creditors].)" (13 Witkin, Summary of Cal. Law (11th ed., 2017) Trusts, § 13, p. 621.)

However, the establishment of a trust relationship by statute does not automatically impose fiduciary duties on the putative trustee. The Trust Law (Prob. Code, § 15000 et seq.), which imposes fiduciary duties on trustees, excludes from its scope numerous trust relationships that are known as "trusts." Business trusts taxed as partnerships or corporations, regulated investment trusts, common trust funds, liquidation trusts, trusts for paying debts, dividends, interest, salaries, wages, profits, pensions, or employee benefits, and, most notably, "[t]ransfers in trust for purpose of suit or

9

enforcement of a claim or right," are all expressly not "trusts" for purposes of the Trust Law and its imposition of fiduciary duties. (Prob. Code, § 82, subd. (b)(6), (7), (8), (11), (12, (13).)

If the Trust Law's duties apply to these trust relationships, they do so only pursuant to other statutory or common law principles, by court order or rule, or by contract. (Prob. Code, § 15003, subd. (c).) We are aware of no statute, common law, court order, or contract that imposes the Trust Law's fiduciary obligations on a county holding excess tax sale proceeds in trust.

Courts have discussed whether a trust relationship is a strict trust in other contexts. In *Meyers v. The Retirement Fund of Federated City Employees* (2014) 223 Cal.App.4th 1201 (*Meyers*), the court held that Trust Law procedures authorizing the removal of trustees did not apply to a city's pension fund. The court reached this conclusion even though the state constitution imposes on public pension system boards a "fiduciary responsibility" over the fund's assets and declares those assets to be "trust funds" held to provide benefits to the system's participants. (Cal. Const., art. XVI, § 17, subd. (a).) As shown by Probate Code section 82's exclusion of pension funds and other trust relationships from the Trust Law, "simply because something is referred to as a 'trust' or as a 'trust fund,' even if that reference appears as part of the California Constitution, does not mean that entity or relationship is *necessarily* subject to the trust law provisions of the Probate Code." (*Meyers, supra*, 223 Cal.App.4th at p. 1208, original italics.)

Since the constitutional requirement to hold the assets as trust funds did not by itself establish the pension fund was a trust subject to the Trust Law, the *Meyers* court turned to the voters' intent for enacting the constitutional provision, and again found the fund was not a trust subject to the Trust Law's trustee removal provisions. It found "the intent was to impose fiduciary obligations on retirement boards in relation to their administration of pension funds, as well as protect those assets from appropriation or diversion by the Governor or the Legislature," not to subject the fund to the Trust Law's

10

procedures. (*Meyers, supra*, 223 Cal.App.4th at p. 1209; cf. *O'Neal v. Stanislaus County Employees' Retirement Assn.* (2017) 8 Cal.App.5th 1184, 1207 ["no court has expressly concluded all provisions of the Probate Code governing trusts also govern retirement boards," but "consistent throughout the relevant case law . . . is that the designation of retirement funds as trust funds and the express recognition of fiduciary duties related to management of those funds adds weight to the authority of the common law and statutory doctrines concerning actions taken by those overseeing trust funds"].)

In *McCann, supra*, 129 Cal.App.4th at pages 1398-1399, the court held that a money transmitter required under former Financial Code section 1816 to hold the funds received for transmission as "trust funds" was not a fiduciary. (Stats. 1963, ch. 2052, § 18, p. 4293.) The case involved a purely commercial transaction where fiduciary duties are not owed. Thus, the only common-sense meaning of the "trust fund" language was that the transmission funds were deemed trust funds to protect them from general creditors of the money transmitter. (*McCann, supra*, 129 Cal.App.4th at p. 1399.)

These authorities lead us to conclude the County did not owe plaintiff the fiduciary duties he alleges. That the statutes direct the County to hold the sale proceeds in a trust fund sheds little light on whether the County is a strict trustee owing fiduciary duties. No constitutional provision or statute declares that the County owes fiduciary duties such as plaintiff alleges to claimants of the excess proceeds, and no common law or court order compels such duties.

The statutes governing the distribution of excess proceeds set forth the County's duties in relation to the trust fund, and those duties do not include those alleged by plaintiff. As already stated, the County retains the excess proceeds in the delinquent tax sale trust fund for purposes of meeting valid claims for a share of the proceeds by any lienholders or interest owners of record before the sale occurred. (§ 4674.) Claimants must establish their rights to the excess proceeds. (§ 4675, subd. (d).) Ultimately, the board of supervisors' rules on the claims and distributes the excess proceeds, first to any

11

lienholders and then to any person who had title of record prior to the tax sale. (§ 4675, subd. (e).)

Nothing in the governing statutes required the County to audit and justify to plaintiff the expenditure of any amount above what plaintiff owed in taxes, invest the excess proceeds on plaintiff's behalf, or pay interest or a return on investment to plaintiff. Indeed, " '[t]he liability of the state to pay interest is "purely statutory ." ' (*People v. Union Oil Co.* (1957) 48 Cal.2d 476, 480, quoting *Gregory v. State of California* (1948) 32 Cal.2d 700, 703.) 'While an interest obligation based upon contract may resist change under constitutional guarantees, a statutory interest right for a particular period depends upon the law in effect at that time. This has been the settled law in this state for many years.' (*People v. Union Oil Co., supra*, at p. 482, citing *White v. Lyons* (1871) 42 Cal. 279, 284 & *Gregory v. State of California, supra*, at p. 702.)" (*City of Clovis v. County of Fresno* (2014) 222 Cal.App.4th 1469, 1487.) The distribution statutes do not carve out an exception to this rule.

The fiduciary duties imposed under the Trust Law likely do not apply because the County transferred the sale proceeds into the trust fund to meet all of the potential claims that could be made against the funds, including its own, before it could be used to meet plaintiff's claim. (Prob. Code, § 82, subd. (b)(11).) Plaintiff had no legal or equitable interest in the excess proceeds until he established his former interest in the property and the County approved his claim.

The "object of [section 4675 allowing claims for the excess proceeds] is to protect homeowners who default on taxes from losing the equity in their homes in excess of the amount of their tax liability. The statute was enacted with this specific purpose and was designed to change prior law that distributed all excess proceeds 'to the taxing agencies which had had unpaid assessments against the property.' (*First Corporation, Inc. v. County of Santa Clara* (1983) 146 Cal.App.3d 841, 844.) Previously, a property owner in default on property taxes lost the property and any right to excess proceeds from its

12

sale. (*Chesney v. Gresham* (1976) 64 Cal.App.3d 120, 131.)" (*Carloss v. County of Alameda* (2015) 242 Cal.App.4th 116, 128.)

The distribution statutes fulfill this purpose and protect the homeowners' equity by requiring the County to hold the sale proceeds in trust, where they are separate from its general fund and not accessible by claimants or creditors other than those the statutes authorize and who claim in the required manner. The statutes impose no other trustee duties on the County except to distribute the proceeds as the statutes direct. There is no duty on the County for plaintiff's benefit to audit expenses, invest the excess proceeds, or pay interest to him. Because whatever duty the County owed did not arise to the fiduciary duty as envisioned by plaintiff, his cause of action for breach of fiduciary duty fails. The trial court did not err in sustaining the demurrer against it.[2]

B.     *Conversion*

In his second amended complaint, plaintiff alleges the County committed the tort of conversion. He claims he had an exclusive right to possess the excess proceeds from the tax sale, and the County unlawfully converted the net proceeds from its investment of

---

[2]     The County claims we should view the relationship between it and plaintiff as like that of a bank and its depositors. It asserts it is only holding plaintiff's money, and the relationship between a bank and its depositors is that of debtor-creditor and is not a fiduciary one. (*Das v. Bank of America, N.A.* (2010) 186 Cal.App.4th 727, 741.) The analogy has some drawbacks. A bank does not just hold a depositor's money. "[W]here the payment of money is intended to create a debtor-creditor relationship, even though the payee may be contractually obligated to pay an equal amount to a third person, the money paid becomes the property of the payee and he may commingle it with his other funds and use it for his own purposes, and the payor retains no beneficial interest in the money but, rather, relies upon his contractual rights against the payee. (See Rest.2d Trusts, § 12, coms. a and g, pp. 35, 37.)" (*Petherbridge v. Prudential Sav. & Loan Assn., supra*, 79 Cal.App.3d at p. 518.) Although plaintiff does not have an ownership interest in the sale proceeds, the County is required to hold them in trust separate from its general fund, and it is not authorized to use the proceeds for any purpose it chooses.

the tax sale proceeds and interest earned on them.  The claim fails to state a cause of action.

" ' "Conversion is the wrongful exercise of dominion over the property of another. The elements of a conversion claim are:  (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages. . . ."  [Citation.]'  (*Los Angeles Federal Credit Union v. Madatyan* (2012) 209 Cal.App.4th 1383, 1387; see CACI 2100; *Gruber v. Pacific States Sav. & Loan Co.* (1939) 13 Cal.2d 144, 148 [conversion is the wrongful exercise of dominion 'over another's personal property in denial of or inconsistent with his rights therein'].)"  (*Welco Electronics, Inc. v. Mora* (2014) 223 Cal.App.4th 202, 208.)

Reciting the tort's elements discloses the weakness in plaintiff's allegations. Plaintiff did not own or have a right to possess the excess proceeds.  As already stated, plaintiff had no right or property interest in any return on investment or interest the County may have earned on the excess proceeds.  Indeed, plaintiff had no recognizable right or interest in the excess proceeds themselves until after the board of supervisors approved his claim.  Moreover, plaintiff cannot allege the County committed a wrongful act.  As already concluded, the County did not owe a common law fiduciary duty to plaintiff, and no statute required the County to pay plaintiff interest or an investment return on the excess proceeds.  Because plaintiff cannot allege a property right or a wrongful act converting plaintiff's property, he cannot as a matter of law allege a cause of action for conversion.

## III

### *Denying Leave to File a Third Amended Complaint*

Defendant claims the trial court erred in denying leave to file a third amended complaint.  He argues his stricken third amended complaint contained sufficient

14

allegations to survive a demurrer and there are no legal restrictions on his right to rename a Doe defendant. The trial court did not err.

Where a trial court sustains a demurrer without leave to amend, "we must decide whether there is a reasonable possibility the plaintiff could cure the defect with an amendment. ([*Blank v. Kirwan, supra*, 39 Cal.3d at p. 318].) If we find that an amendment could cure the defect, we conclude that the trial court abused its discretion and we reverse; if not, no abuse of discretion has occurred. (*Ibid.*) The plaintiff has the burden of proving that an amendment would cure the defect. (*Ibid.*)" (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.)

Plaintiff has not established he could cure the defects in his second amended complaint with an amendment. The proposed third amended complaint, included in the record, demonstrates plaintiff cannot state a claim. In his proposed pleading, plaintiff again alleges causes of action for breach of fiduciary duty and conversion. We have already concluded he cannot state these claims as a matter of law.

The proposed pleading alleges as a separate cause of action that the tax sale of his property was an unconstitutional taking. This cause of action, assuming only for argument that it states a claim, is time barred. An action challenging the validity of a tax sale must be commenced within one year of the date the board of supervisors determines the tax deed should not be rescinded. (§ 3725, subd. (a)(2).) In his second amended complaint and his proposed third amended complaint, plaintiff alleged the County determined not to rescind the tax sale on June 18, 2013. Plaintiff filed his original complaint in this action on July 23, 2015, more than two years after the board's decision.

The proposed third amended complaint also seeks declaratory relief. The relief he seeks, however, is based on his claims for breach of fiduciary duty, conversion, and taking, claims on which he cannot recover.

15

Plaintiff proposes naming the state controller as a defendant in the role of trustee of defendant "California Delinquent Tax Sale Trust." But the third amended complaint alleges the same defective causes of action against the controller as it does the County.

Because plaintiff has shown he cannot plead around the defects of his second amended complaint, we conclude the trial court did not abuse its discretion denying him leave to amend.

## DISPOSITION

The judgment of dismissal is affirmed. Costs on appeal are awarded to the County. (Cal. Rules of Court, rule 8.278(a).)

_____
HULL, J.

We concur:

_____
BLEASE, Acting P. J.

_____
RENNER, J.

16